# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEREMY ABSTON,

        Defendant-Appellant.

UNPUBLISHED
July 26, 2018

No. 338401
Washtenaw Circuit Court
LC No. 16-000921-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEREMY ABSTON,

        Defendant-Appellant.

No. 338402
Washtenaw Circuit Court
LC No. 16-000886-FH

---

Before: RONAYNE KRAUSE, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

These consolidated appeals arise from two separate criminal prosecutions brought against defendant, Jeremy Abston, both of which involved allegations that Abston had engaged in acts of domestic violence against his former girlfriend. The two prosecutions were consolidated for trial. This Court likewise consolidated Abston's appeals to advance the efficient administration of the appellate process. *People v Abston*, unpublished order of the Court of Appeals, entered May 24, 2017 (Docket Nos. 338401 and 338402). In Docket No. 338401, Abston was convicted by a jury of third-offense domestic assault, MCL 750.81(5), in connection with events that occurred in June 2016. In Docket No. 338402, Abston was convicted by the same jury of the unlawful driving away of a motor vehicle (UDAA), MCL 750.413, and an additional count of third-offense domestic assault, arising from events that occurred in September 2016. Abston was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent sentences of 30 months to 15 years' incarceration for each of the three offenses. Abston appeals as of right, arguing that he was improperly sentenced as a fourth-offense habitual offender and alleging various errors in the scoring of offense variables (OVs). We affirm.

-1-

## I. HABITUAL OFFENDER STATUS

Abston first argues that he should not have been sentenced as a fourth-offense habitual offender. At sentencing, defense counsel objected to the enhancement of the sentencing guidelines range, noting that the Presentence Investigation Report (PSIR) only listed two prior felonies. In response, the prosecution advised that Abston had also been convicted of two counts of attempted resisting and obstructing of a police officer (R&O), MCL 750.81d(1), in 2014, which qualified as attempted felonies that could be used to enhance Abston's sentence. Defense counsel again noted that the PSIR listed only two felonies and added that he did not see the attempted R&O convictions reflected therein. The prosecution responded that those convictions were listed in its habitual offender notice. Defense counsel replied, "Okay." The prosecutor then recited Abston's prior felony convictions: receiving and concealing a stolen motor vehicle, MCL 750.535(7), in 2006 and interfering with electronic communications, MCL 750.540(5)(a), in 2013. The court responded, "Very well," and defense counsel moved on to challenge another portion of the PSIR. Later, during allocution, defense counsel stated he had looked to Abston's criminal history and, while "there was established the habitual four[th], he only has actually two prior felonies. The other two were attempt felonies which were misdemeanors."

On appeal, Abston argues that the court erred in sentencing him as a fourth-offense habitual offender. We disagree. Counsel's agreement that the prosecution established Abston as a fourth-offense habitual offender waived this claim. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000); *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998) ("A defendant may not waive objection to an issue before the trial court and then raise it as an error before this Court. To hold otherwise would allow defendant to harbor error as an appellate parachute.") (citation omitted).

Moreover, even if defense counsel had not waived this issue, a defendant can be sentenced as a fourth-offense habitual offender if he "has been convicted of any combination of 3 or more felonies or attempts to commit felonies . . . ." MCL 769.12(1). "The existence of a prior conviction may be established by any evidence that is relevant for that purpose, including, but not limited to . . . [a] copy of a court register of actions." MCL 769.13(5)(c). According to court records, Abston pleaded nolo contendere to two counts of attempted R&O.[1] As discussed by the prosecutor below, those offenses constitute attempts to commit a felony for purposes of habitual offender sentence enhancements. *People v Slocum*, 156 Mich App 198, 200-201; 401 NW2d 271 (1986). See also *People v Hornsby*, 251 Mich App 462, 469-473; 650 NW2d 700 (2002) (affirming habitual offender sentence involving previous attempted resisting and obstructing convictions). Although Abston's 2014 convictions are not reflected in his PSIR, we take judicial notice of the fact of their existence. See MRE 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.") and MRE

---

[1] See Michigan Courts, *Case Detail* <https://micourt.courts.michigan.gov/CaseSearch/Terms?R eturnUrl=%2FCaseSearch%2F> [complete reCAPTCHA, click "14A District Court," search "Jeremy Abston," click 132-0254] (accessed July 19, 2018).

201(c) ("A court may take judicial notice, whether requested or not . . . ."). The trial court properly sentenced Abston as a fourth-offense habitual offender.

## II. STANDARD OF REVIEW

Turning to Abston's OV challenges, our Supreme Court has explained both the quantum of evidence necessary to support a scoring decision and the standard of review to be used by this Court:

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations and footnote omitted).]

## III. OFFENSE VARIABLE 3

Abston argues that the trial court erroneously assessed 10 points for OV 3 (physical injury to victim), MCL 777.33, on the basis of bodily injury requiring medical treatment.[2] Although Abston acknowledges that the victim was transported to the hospital following the September 2016 incident, he contends that she did not receive medical treatment for an injury, as she was only taken to the hospital as a precautionary measure because she was pregnant, she was struck in the abdomen, and there was concern for the safety of the unborn child. Therefore, Abston contends that an inadequate factual basis existed to assess 10 points for OV 3. We disagree.

MCL 777.33(1)(d) directs the trial court to assess 10 points for OV 3 where "[b]odily injury requiring medical treatment occurred to a victim[.]" "[A] 'victim' is any person who is harmed by the defendant's criminal actions." *People v Laidler*, 491 Mich 339, 348; 817 NW2d 517 (2012). This Court has held that the phrase "bodily injury" includes "anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). Furthermore, the phrase "requiring medical treatment" is statutorily defined to refer to "the necessity for treatment," as opposed to "the victim's success in obtaining treatment." MCL 777.33(3); *People v Maben*, 313 Mich App 545, 551; 884 NW2d 314 (2015). Therefore, a trial court may assess 10 points for OV 3 without establishing that treatment was actually received. *Maben*, 313 Mich App at 551 ("Maben's description of the manner in which he strangled his brother, and the undisputed information that the officers observed redness around his brother's neck, that his brother defecated during the assault, that he reported soreness to his neck and throat, and that he told the officers that he intended to seek treatment, provided independent support for the trial court's" assessment of 10 points under OV 3).

---

[2] This challenge is raised only in Docket No. 338402.

In this case, the victim testified that Abston struck her face with the butt of his gun, injuring her lip. He also choked her with both hands for two to three minutes with such force that she could barely breathe. Later, while astride the victim, Abston forcefully struck her belly. The victim was over twelve weeks pregnant with Abston's child. Abston then repeatedly punched the victim in the back of her head several times. She described one of his blows as "the hardest" he had ever inflicted. According to the victim, she felt "kind of funny, . . . dizzy and really sleepy, in and out." Abston appeared nervous about the extent of the injuries he had caused and offered her over-the-counter pain medication. Because the victim had a lot of pain in her head, she kept ice packs on it for a couple of days.

In addition, the EMT who transported the victim to the hospital testified he observed scrapes on the victim's head and red marks on her neck. The police officers documented the victim's injuries, including bruises on her neck and underneath her ear. As with other strangulation cases, the EMT was concerned about damage to the internal structure of her neck, a lack of oxygen to her brain, loss of consciousness, or an embolism traveling to her brain. Unlike the EMT, who could only observe external injury, emergency room personnel could assess whether there was internal damage. The EMT also candidly testified that one of the reasons he recommended the victim go to the emergency room was out of concern for her unborn child after the victim reported Abston had punched her in the stomach.

We conclude that the record evidence regarding the victim's injuries and subsequent treatment was sufficient to support the trial court's decision to assess 10 points for bodily injury requiring medical treatment under OV 3. See *id.* at 551-552. Cf. *People v McCuller*, 479 Mich 672, 697; 739 NW2d 563 (2007) (holding that the trial court properly assessed 25 points for OV 3 when a victim was struck violently in the head causing a concussion and requiring a multiple-day hospitalization); *People v Rosa*, 322 Mich App 726, 747; __ NW2d __ (2018) (a 25-point score for OV 3 is supported when "the evidence shows that the strangulation was severe enough and continued long enough such that the victim lost consciousness or control over bodily functions—albeit temporarily—[because] it demonstrates that the anoxic injury was severe enough to be life threatening.")

## IV. OFFENSE VARIABLE 7

Abston next argues that the trial court erroneously scored OV 7 (aggravated physical abuse), MCL 777.37,[3] because the egregious type of behavior that would support assessing 50 points was rejected by the jury when it acquitted him of more serious charges.[4] We disagree.

---

[3] This challenge again relates only to Docket No. 338402.

[4] The jury acquitted Abston of first-degree home invasion, MCL 750.110a(2), assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a), assault by strangulation, MCL 750.84(1)(b), assault with a dangerous weapon, MCL 750.82, larceny in a building, MCL 750.360, possession of a firearm during the commission of a felony, MCL 750.227b, malicious destruction of property less than $200, MCL 750.377a(1)(d), and second-offense aggravated domestic assault, MCL 750.81a(3). The prosecution also dismissed charges for assault and

-4-

The trial court is required to assess 50 points for OV 7 if it determines that "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" MCL 777.37(1)(a). Despite Abston's argument to the contrary, it is of no moment that he was acquitted of more serious offenses. See *People v Golba*, 273 Mich App 603, 614; 729 NW2d 916 (2007) ("A trial court may consider facts concerning uncharged offenses, pending charges, and even acquittals, provided that the defendant is afforded the opportunity to challenge the information and, if challenged, it is substantiated by a preponderance of the evidence."); *People v Ratkov (After Remand)*, 201 Mich App 123, 126; 505 NW2d 886 (1993) (reasoning that evidence may be sufficient to support a finding by a preponderance of the evidence for purposes of sentencing despite factfinder's conclusion that the evidence was insufficient to prove the fact beyond a reasonable doubt). Instead, the relevant inquiries are whether the trial court's findings concerning OV 7 were supported by a preponderance of the evidence and whether those findings satisfy the statutory scoring conditions. *Hardy*, 494 Mich at 438.

At sentencing, defense counsel objected to the assessment of 50 points for OV 7, arguing that Abston did not engage in the extraordinary type of conduct described in MCL 777.37(1). The trial court rejected defense counsel's position, saying,

> I believe OV 7 is properly scored. Clearly the evidence this Court heard from a preponderance of the evidence standard supports a finding that, in fact, OV 7 will be scored at fifty points.
>
> There are various levels obviously of interaction, actions, direct actions taken. Clearly what occurred here was beyond a simple straightforward domestic violence issue. I believe fifty points is properly scored.

Although it is difficult to discern from this explanation whether the trial court determined that Abston's conduct constituted sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the victim's fear, we find it unnecessary to clarify the basis for the trial court's ruling because OV 7 was properly scored on the basis of excessive brutality.

"For the purpose of OV 7, excessive brutality requires savagery or cruelty beyond the usual brutality of the crime." *People v Steanhouse (On Remand)*, 322 Mich App 233, 240; 911 NW2d 253 (2017), appeal held in abeyance __ Mich __; 910 NW2d 656 (2018). In *Rosa*, 322 Mich App at 731, the victim testified that the defendant entered her bedroom while she was asleep and placed a pillow over her face and a belt around her neck. After the victim was able to loosen the belt with her hands, the defendant tightened it around her neck a second time, cutting off her ability to breath. The victim's child was asleep in the same bed at the time of the attack, and when the child awoke, the defendant told the child "to say goodbye to the victim and that her grandmother would take good care of her." *Id*. at 744. This Court determined that the record

---

battery, MCL 750.81, and fourth-degree child abuse, MCL 750.136b(7) before the trial commenced.

supported the trial court's decision to assess 50 points for OV 7, reasoning, in part, that the defendant's conduct was excessively brutal. *Id*.

Here, the evidence presented at trial was analogous to the evidence described in *Rosa*. Specifically, the victim testified that she awoke at about 3:00 a.m. to discover Abston standing over her with a gun in his hand, having entered her home without her knowledge. According to the victim, Abston said, "[T]his is it for you b***h," hit her in the face with the butt of the gun, and strangled her with both hands. The victim's young child was sleeping nearby and woke up during the struggle, at which point Abston stopped choking the victim. However, Abston became angry again after going through the contents of the victim's cell phone. He then accused her of sleeping with someone else, shattered her cell phone, and "glazed" the blade of a butter knife against her son's cheek. After the victim knocked the knife from Abston's hand, Abston tackled her and her son to the floor, where he proceeded to punch the victim in the belly and the back of her head. At trial, Abston acknowledged that he was aware that the victim was pregnant. Given the similarities between these facts and those at issue in *Rosa*, we conclude that Abston's conduct can be characterized as excessively brutal in that it was unusually cruel and went well beyond the minimum conduct required to commit domestic assault. Accordingly, the trial court did not err by assessing 50 points for OV 7.

## V. OFFENSE VARIABLE 10

Abston next argues that the trial court erroneously assessed 10 points for OV 10 (exploitation of vulnerable victim), MCL 777.40.[5] Abston argues that there was an inadequate factual basis for this score because there was no evidence that he exploited his domestic relationship with the victim. We disagree.

Ten points must be assessed for OV 10 when "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status[.]" MCL 777.40(1)(b). In grouping domestic relationships with other categories of obvious vulnerability (physical disability, mental disability, youth, and agedness), the statute recognizes that domestic relationships themselves may create vulnerabilities. Abston does not dispute he and his victim were involved in a domestic relationship, but claims the trial court erred in determining he exploited that relationship. The statute provides that the word "exploit" means "to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b).

In both appeals, we cannot say that the trial court clearly erred in finding, by a preponderance of the evidence, that Abston exploited his prior domestic relationship with the victim. In Docket No. 338401, Abston was angry with the victim for being disrespectful to him when she intervened in an earlier altercation he had with her son's father. When Abston later picked up the victim from work in her brother's car, he continued to chide her and struck her in the face. After they returned home, Abston again struck the victim, took the car keys to prevent her from leaving, took her phone so that she could not call for help, told her she was not going to

---

[5] Abston's claim applies to both appeals.

work the following day, and threatened to have her harmed if she tried to leave. The victim went to sleep and awoke to Abston complaining about her behavior to a friend on the phone. When the call ended, Abston threw the victim on the bed and began to choke her. The victim eventually fled her home, convincing Abston to let her walk her dog, and had a stranger call 911.

Given his relationship with the victim, Abston knew her son and his father would not be there and that he could overpower her physically. Motivated by his jealousy, Abston further isolated the victim, taking her car keys and phone, instructing her not to go to work, and threatening her if she attempted to leave her home. This facilitated his assault upon her shortly after she woke. Because the record supports the trial court's determination that Abston exploited his domestic relationship with the victim through threatening and abusive conduct, it properly scored 10 points for OV 10 in Docket No. 338401.

In Docket No. 338402, the victim testified that, after they had broken up and Abston was no longer living in her home, she had a physical altercation with him on September 12, 2016. Fearing another encounter, the victim asked her son's father to come to her home when she returned from work the following evening. The father "[c]hecked the rooms and everything seemed fine . . . ." After the victim fell asleep, the father left and, at about 3:00 a.m., the victim awoke to discover Abston standing over her. He said, "[Y]ou should have checked the closet." We infer from this statement that Abston avoided detection by hiding in the closet until the victim was asleep and her son's father had left. We agree with the prosecution's contention that the knowledge Abston gained during his relationship with the victim—namely, the layout of her home—allowed him to conceal himself in a location where he could remain undiscovered until he chose to act. In other words, Abston used his history with the victim for selfish or unethical purposes. See MCL 777.40(3)(b). Accordingly, the trial court did not err by assessing 10 points for OV 10 in Docket No. 338402.

## VI. OFFENSE VARIABLE 19

Lastly, Abston argues that the trial court erroneously assessed 10 points for OV 19 (interference with administration of justice), MCL 777.49.[6] Abston contends that the trial court scored OV 19 based on the prosecution's argument that he violated a no-contact order, tried to get a last-minute witness to come to court to testify on his behalf,[7] and had to be picked up by police. Although we agree that not all of those facts warrant assessment of 10 points, we conclude that the record supports the trial court's decision to assess 10 points for OV 19 for two reasons.

---

[6] The trial court scored 10 points for OV 19 in both cases.

[7] Abston indicated that the victim's brother, who was in jail at the time of the trial, would testify for him. On the other hand, the prosecution indicated that it had evidence the brother would testify perjuriously. Although local jail personnel indicated that the brother would be produced, if requested, he did not testify.

The scoring of OV 19 is governed by MCL 777.49, which provides:

Offense variable 19 is threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services. Score offense variable 19 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) The offender by his or her conduct threatened the security of a penal institution or court ……………………………………………………… 25 points

(b) The offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services ……………………………………………...…………… 15 points

(c) The offender otherwise interfered with or attempted to interfere with the administration of justice …………………………………………… 10 points

(d) The offender did not threaten the security of a penal institution or court or interfere with or attempt to interfere with the administration of justice or the rendering of emergency services by force or threat of force …………….. 0 points

Initially, while Abston correctly identifies the three arguments presented by the prosecution in support of assessing 10 points for OV 19, we do not construe the trial court's explanation of its ruling as adopting all of the prosecution's arguments. Instead, it appears that the trial court focused on the prosecution's contention that Abston fled from arrest, thereby requiring the combined efforts of several law enforcement agencies to bring him into custody.[8]

"[P]ostoffense conduct may be considered when scoring OV 19." *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). Furthermore, our appellate courts have held that both fleeing and hiding from the police can form the basis for assessing 10 points for OV 19. See, e.g., *People v Miller*, 489 Mich 855 (2011) (reinstating trial court's judgment of sentence because OV 19 was correctly scored at 10 points);[9] *People v Smith*, 318 Mich App 281, 286; 897 NW2d 743 (2016) ("Hiding from the police constituted an interference with the administration of justice because it was done for the purpose of hindering or hampering the police investigation."). Stated otherwise, "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours,* 315 Mich App 346, 349; 890 NW2d 401 (2016).

---

[8] During Abston's trial, the lower court instructed the jury on flight. M Crim JI 4.4.

[9] The Supreme Court reversed part of this Court's opinion in *People v Miller (On Reconsideration)*, unpublished per curiam opinion of the Court of Appeals, issued February 16, 2010 (Docket No. 287859), pp 8-9, wherein the Court of Appeals agreed that OV 19 was improperly scored on the basis of fleeing the state after the sentencing offense was completed.

The record shows that following Abston's September assault, he left a letter for the victim at her home, which she quickly turned over to Washtenaw County Sheriff's Department Deputy Shane Bynum. In part, Abston's letter read: "[By the] [t]ime u read this ima be out of town," and "[L]ook at me on the run for life now. . . ." At trial, Abston admitted that the latter statement meant he intended to leave the state; however, he maintained he was doing so because he was finished with the relationship. At that point, Abston also had an outstanding bench warrant for breaking and entering in Wayne County.

Deputy Bynum testified that he and Abston exchanged several calls in the days following the September 14, 2016 assault, to make arrangements to meet. Charges were issued against Abston on September 15, 2016. During trial, Abston testified that Deputy Bynum told him he was not under arrest and simply wanted to talk to him. At the preliminary examination, however, Deputy Bynum testified Abston was supposed to turn himself in and eventually failed to appear. Deputy Bynum then reached out to Detective-Lieutenant Jim Anuszkiewicz, who, after obtaining a "trap[-and-]trace warrant," discovered that Abston was in the Detroit area. A car belonging to the victim's brother, which Abston drove away in after the assault, was abandoned there—about 2.6 miles from Abston's sister's house in Eastpointe.[10] After 2:00 a.m. on September 17, 2016, the police found Abston inside his sister's home, even though she had told them he was not there. Given these facts, the sentencing court's conclusion that Abston attempted to interfere with the administration of justice by fleeing is not clearly erroneous.

The trial court's scoring of OV 19 was also supported by Abston's violation of court orders prohibiting contact with the victim. Abston himself testified that he knowingly violated the no-contact orders by communicating with the victim several times by phone, but rationalized his violations by insisting that he did not initiate the contact and that the victim had told him she had "taken care of" the no-contact orders. The victim testified that Abston also sent her numerous letters in envelopes containing her brother's name as well as the name of another person. Abston's decision to communicate with the victim in total disregard of the no-contact orders he signed was an attempt to interfere with the administration of justice. As such, the sentencing court properly assessed 10 points for OV 19.

Furthermore, even if we were to conclude that OV 19 was erroneously scored, Abston would not be entitled to resentencing. "[I]f the defendant's sentence is within the recommended guidelines range, resentencing is not required unless there is a scoring error that changes the guidelines range or the trial court relied on inaccurate information in sentencing the defendant." *People v Carpenter*, __ Mich App __, __; __ NW2d __ (2018) (Docket No. 335383); slip op at 4-5, citing *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006), and *Sours*, 315 Mich App at 350-351. Here, Abston's total OV score was 90 points. Coupled with his prior record variable score of 45 points, which he does not contest on appeal, the guidelines called for the recommended minimum sentence range set forth in the D-VI cell of the class E sentencing grid,

---

[10] After Abston took the car, the victim gave her brother Abston's phone number. The victim's brother texted or Facebook messaged Abston about a dozen times and talked to him four or five times before Abston finally disclosed the location of the car.

MCL 777.66, subject to enhancement on the basis of his status as a fourth-offense habitual offender. Because the level VI cells are applicable whenever the defendant has an OV score of 75 points or higher, *id.*, the minimum sentence range recommended by the guidelines would remain the same even if we were to find that no points should have been assessed for OV 19. Therefore, Abston has not demonstrated entitlement to resentencing. *Carpenter*, __ Mich App at __; slip op at 4-5.

      Affirmed.


      /s/ Amy Ronayne Krause
      /s/ Elizabeth L. Gleicher
      /s/ Anica Letica