# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES ROBERT MABEN,

        Defendant-Appellant.

FOR PUBLICATION
December 10, 2015
9:10 a.m.

No. 321732
St. Clair Circuit Court
LC No. 13-002103-FH

Before: RONAYNE KRAUSE, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Defendant, James Robert Maben, pleaded guilty to assault by strangulation or suffocation, MCL 750.84(1)(b), for which the trial court sentenced him as a fourth habitual offender, MCL 769.12, to serve six years and four months to 20 years in prison. On appeal by leave granted, Maben raises several sentencing errors.[1] We conclude that the trial court did not err when it scored Maben's sentencing variables; however, we agree that the trial court abused its discretion when it refused to consider Maben's challenges to his presentence investigation report (PSIR). For that reason, we remand for a hearing to address those challenges.

Maben's conviction arises out of an altercation with his brother. As a factual basis for his plea, Maben stated that he became involved in a verbal altercation with his brother, who worked for him. He admitted that he placed his hands around his brother's throat and began to strangle him by applying pressure and impeding his ability to breathe.

According to the author of the PSIR, police officers observed red marks on Maben's brother's neck, and took photographs. Additionally, his brother reported to officers that he nearly lost consciousness and defecated during the assault; however, he told the probation officer who prepared the PSIR that he in fact lost consciousness. Maben's brother refused to be

---

[1] In addition to the claims addressed in this appeal, Maben challenged the trial court's use of facts not found by the jury to score his sentencing variables. However, after our Supreme Court issued its decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), Maben filed a notice with this court indicating that, after consulting with his appellate lawyer, "he has elected not to pursue this particular issue on appeal." We have limited our review accordingly.

transported to a hospital, but related that he would obtain treatment on his own. Maben objected to several portions of the PSIR and the scoring of his sentencing variables. The trial court rejected most of the challenges, but agreed to strike references to a prior sexual assault against a child and to a personal protection order.

Maben first argues that the trial court erred in scoring prior record variable (PRV) 5 and offense variable (OV) 3. A trial court's findings of fact at sentencing must be supported by a preponderance of the evidence; this Court reviews a trial court's findings of fact for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). This Court reviews de novo whether the facts are adequate to satisfy the statutory criteria for scoring the variable. *Id*.

The trial court scored 50 points for Maben's PRVs and 30 points for his OVs, which put his recommended minimum sentence range at 19 to 38 months in prison. See MCL 777.65. After doubling the maximum of the range to reflect his status as a habitual offender, see MCL 777.21(3)(c), Maben's recommended minimum sentence range was 19 to 76 months.

Maben first argues that the trial court erred when it scored PRV 5 at 20 points; specifically, he argues that he only has six qualifying prior misdemeanor convictions, not seven or more. The trial court had to score PRV 5 at 20 points if, in relevant part, Maben had seven or more prior misdemeanor convictions. MCL 777.55(1)(a). A prior misdemeanor conviction may be scored only "if it is an offense against a person or property, a controlled substance offense, or a weapon offense." MCL 777.55(2)(a). Maben argues that the trial court erred when it determined that his convictions for malicious use of a telecommunications device constituted offenses against a person as required by MCL 777.55(2)(a).

A person is prohibited from maliciously using "any service provided by a telecommunications service provider with intent to terrorize, frighten, intimidate, threaten, harass, molest, or annoy *another person*, or to disturb the peace and quiet of *another person*" through various types of communications. MCL 750.540e(1) (emphasis added). The Legislature has not adopted classifications for misdemeanor offenses such as this one. See MCL 777.5; *People v Bonilla-Machado*, 489 Mich 412, 422; 803 NW2d 217 (2011) (noting that the offense categories stated under MCL 777.5 apply to felonies).

Maben contends that analogous felony offenses have been categorized as offenses against public order or public safety, and therefore, the misdemeanor offense should not be classified as an offense against a person or property, citing MCL 750.540 and MCL 750.167d. However, those offenses and another offense, which Maben describes but does not cite, do not proscribe activity directed at a particular individual. By contrast, the malicious use of a telecommunications device specifically addresses communications directed at "another person." MCL 750.540e(1). Therefore, the trial court correctly determined that it is an offense against a person and scored PRV 5 accordingly.

Next, Maben argues that the trial court erred in scoring 10 points under OV 3. The trial court had to score OV 3 at 10 points if "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). Maben maintains that there was no evidence that his brother actually suffered a bodily injury that required medical treatment.

The author of the PSIR wrote out Maben's brother's impact statement. Maben's brother said "he took himself to the River District Hospital after the attack", "suffered back injuries", and would be "seeing a specialist to get a CAT Scan to see if he has any permanent damage." His brother also related that "he was choked unconscious and his brain was denied oxygen." Although Maben's brother's statement plainly supports the trial court's score, Maben argues that, because he disputed at sentencing that his brother actually went to the hospital, the trial court erred in scoring 10 points for OV 3 without independently verifying the report.

The trial court may rely on reasonable inferences arising from the record evidence to support a particular score. *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012). In providing a factual basis for his guilty plea, Maben acknowledged that he placed his hands around his brother's neck and throat, and applied pressure such that his brother suffered injury. In addition, Maben did not dispute the information in the PSIR that officers "observed redness" to his brother's "neck area" and that his brother "complained of soreness to his neck and throat area." The author of the PSIR also indicated that Maben's brother refused an ambulance, but told the officers that he "would seek treatment on his own."

The phrase " 'requiring medical treatment' " for purposes of OV 3 "refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3). Thus, it was not necessary to establish that Maben's brother actually went to the hospital. Moreover, Maben's description of the manner in which he strangled his brother, and the undisputed information that the officers observed redness around his brother's neck, that his brother defecated during the assault, reported soreness to his neck and throat, and that he told the officers that he intended to seek treatment, provided independent support for the trial court's finding. Although Maben notes that his brother's statements concerning whether he lost consciousness were inconsistent, the inconsistencies do not require an evidentiary hearing. Regardless of whether his brother lost consciousness, a preponderance of the evidence supports the trial court's 10-point score.[2]

Next, Maben argues that he is entitled to resentencing or correction of the PSIR because the trial court failed to adequately address several of his challenges to it. "This Court reviews a trial court's response to a defendant's challenge to the accuracy of a PSIR for an abuse of discretion." *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008). A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes. *Id.*

In *Morales v Parole Bd*, 260 Mich App 29, 45-46; 676 NW2d 221 (2003), this Court discussed the purpose and scope of a presentence report and explained that the PSIR was intended to assist the parole board in making release decisions and to enhance public safety:

---

[2] Maben also argues that his trial lawyer was ineffective for conceding that five points could be scored under OV 3. However, given our resolution of this scoring issue, it is unnecessary to address whether his trial lawyer's concession amounted to ineffective assistance.

The presentence investigation report is an information-gathering tool for use by the sentencing court. Therefore, its scope is necessarily broad. A judge preparing to sentence a defendant may consider comments made by the defendant to the probation officer during the presentence interview in addition to evidence adduced at trial, public records, hearsay relevant to the defendant's life and character, and other criminal conduct for which the defendant has not been charged or convicted.

The Michigan Court Rules provide that the presentence investigation report must include "a complete description of the offense and the circumstances surrounding it, . . . information concerning the financial, social, psychological, or physical harm suffered by any victim of the offense, . . . any statement the defendant wishes to make . . . [and] any other information that may aid the court in sentencing." To ensure accuracy, the defendant must be given an opportunity to review his presentence investigation report before sentencing. [citations omitted.]

As this Court observed in *People v McAllister*, 241 Mich App 466, 477 n 3; 616 NW2d 203 (2000), remanded on other grounds 465 Mich 884 (2001), the presentence report follows the defendant to prison; it may have ramifications for purposes of security classification or parole consideration when appropriate. Accordingly, a defendant must be given an "opportunity to explain, or challenge the accuracy or relevancy of, any information in the presentence report . . . ." MCR 6.425(E)(1)(b). "If any information in the presentence report is challenged, the court must allow the parties to be heard regarding the challenge, and make a finding with respect to the challenge or determine that a finding is unnecessary because it will not take the challenged information into account in sentencing." MCR 6.425(E)(2). "If the court finds merit in the challenge or determines that it will not take the challenged information into account in sentencing, it must direct the probation officer to" correct or delete the challenged information. MCR 6.425(E)(2)(a). The Legislature has also recognized that a defendant has the right to challenge the accuracy of the information in a PSIR. See MCL 771.14(6).

It is presumed that unchallenged information in the PSIR is accurate, and a judge is entitled to rely on the information unless a defendant raises an effective challenge. *People v Harper*, 479 Mich 599, 642 n 72; 739 NW2d 523 (2007). When information is challenged, the sentencing court has wide latitude in how to respond to the challenged information. *People v Spanke*, 254 Mich App 642, 648; 658 NW2d 504 (2003). "The court may determine the accuracy of the information, accept the defendant's version, or simply disregard the challenged information." *Id*. However, if the court chooses to disregard the challenged information, it must clearly indicate that it did not consider the alleged inaccuracy in determining the sentence. *Id*. at 649. "If the court finds the challenged information inaccurate or irrelevant, it must strike that information from the PSIR before sending the report to the Department of Corrections." *Id*.

Maben filed a two-page, 15-item list of objections to the contents of the PSIR, with most objections pertaining to statements attributed to his brother. At the start of the sentencing proceeding, the trial court noted that it would not expend an hour on sentencing and commented that Maben's objections involved the word of one party against another. For that reason, it stated, "I don't know that there's really any need to respond to them." It did, however, later

agree to strike an allegation involving a personal protection order and allegations that Maben had sexually assaulted a 12-year-old child. The trial court also denied Maben's post-sentencing motion challenging the accuracy of the PSIR. The court commented that the PSIR is "presumptively accurate," and stated that it had "no authority" to strike allegations in a victim's impact statement.

We agree that the trial court failed to adequately resolve Maben's challenges to the accuracy of the PSIR. The trial court erred to the extent that it believed it was not required to resolve his challenges because the PSIR is presumptively accurate. The presumption of accuracy applies only to unchallenged information. *Harper*, 479 Mich at 642 n 72. The trial court also erred in refusing to consider his challenges to factual information related in the impact statement. The Legislature "has determined the contents of the PSIR and has given victims the discretion to determine whether their victim impact statements may be included in the PSIR . . . ." *McAllister*, 241 Mich App at 476-477. We agree that a trial court is not required to strike a victim's subjective statements about the impact of a defendant's crime merely because a defendant disputes those statements. This Court has recognized that the sentencing standards for ensuring that the goals of sentencing are met, along with the court's knowledge that victim impact statements are the subjective opinions by victims, are sufficient protections to ensure that a defendant is not sentenced in response to emotional pleas. *Id.* at 476-477 n 2. In this case, however, the information went beyond describing the impact of Maben's conduct. It included factual allegations about other uncharged crimes, including that Maben had killed cats in front of children, had a "bodyguard/hit man," and had "informed people" that he was going to kill the prosecutor, rape his wife, and kill his family. These allegations did not involve the offense or Maben's brother's subjective statements about the impact of Maben's crime. Moreover, the statement was not written by Maben's brother, but was recorded by the author after interviewing Maben's brother. To the extent that the impact section of the PSIR contained factual allegations unrelated to Maben's crime, and which did not involve Maben's brother's subjective statements, Maben was entitled to challenge the accuracy of the information, particularly considering that the content could have consequences in prison and with the parole board. *Id.* at 477 n 3.

Because the trial court failed to adequately resolve Maben's challenges, we remand this case for proper consideration of his challenges. It is unclear to what extent the trial court may have relied on the challenged information in sentencing. Therefore, on remand, the trial court shall resolve Maben's challenges in accord with MCR 6.425(E) and MCL 771.14(6), and also clarify whether any information found to be inaccurate or irrelevant affected the trial court's sentencing decision. If it is determined that information found to be inaccurate or irrelevant played a role in the trial court's sentencing decision, the trial court shall resentence him. Otherwise, the trial court need only make such changes to the PSIR that it deems in its discretion to be warranted. See *People v Thompson*, 189 Mich App 85, 88; 472 NW2d 11 (1991).

Affirmed, but remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Michael J. Kelly

-5-