*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 21, 2019

Plaintiff-Appellee,

v

No. 341392
Wayne Circuit Court
LC No. 17-000565-01-FC

RASHAD MARCELUS BELL,

Defendant-Appellant.

Before: CAVANAGH, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of voluntary manslaughter,[1] MCL 750.321, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a third habitual offender, MCL 769.11, to 15 to 30 years' imprisonment for manslaughter, 50 to 120 months' imprisonment for felon-in-possession, and two years' imprisonment for felony-firearm. We affirm.

This case arises from substantial hostility and disagreement between two cousins, defendant and Joseph Franklin, which ended when defendant shot and killed Franklin after an altercation in a bar. Cheryl Franklin (Cheryl), Franklin's mother, and defendant's aunt witnessed the killing.

## I. OFFENSE VARIABLE 5 SCORING

Defendant argues that the trial court should have assessed zero points for Offense Variable 5 (OV 5), MCL 777.35, because neither Cheryl nor Tera Buchanan, the mother of

---

[1] Defendant was charged with first-degree murder, MCL 750.316, however, the court convicted defendant of the lesser offense of manslaughter because it did not find that the requisite elements for either first-degree murder, or second-degree murder, MCL 750.317, had been established.

Franklin's two-year-old son, stated that they would be seeking professional treatment when they spoke at defendant's sentencing. We disagree.

This Court reviews de novo the trial court's interpretation and application of the legislative sentencing guidelines. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016). The trial court's " 'factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence.' " *Id*. at 348, quoting *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Clear error occurred if this Court "is left with a definite and firm conviction that a mistake has been made." *People v Waclawski*, 286 Mich App 634, 645; 780 NW2d 321 (2009) (quotation marks and citation omitted). " 'Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.' " *Sours*, 315 Mich App at 348, quoting *Hardy*, 494 Mich at 438.

OV 5 "is scored when a homicide or homicide-related crime causes psychological injury to a member of a victim's family." *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017). MCL 777.35 provides:

(1) Offense variable 5 is psychological injury to a member of a victim's family. Score offense variable 5 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Serious psychological injury requiring professional treatment occurred to a victim's family [ . . .] 15 points

(b) No serious psychological injury requiring professional treatment occurred to a victim's family [ . . .] 0 points

(2) Score 15 points if the serious psychological injury to the victim's family may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive.

" '[S]erious' is defined as 'having important or dangerous possible consequences.' " *Calloway*, 500 Mich at 186 (citations omitted). When scoring OV 5 "a trial court should consider the severity of the injury and the consequences that flow from it, including how the injury has manifested itself before sentencing and is likely to do so in the future, and whether professional treatment has been sought or received." *Id*. A trial court can properly assess 15 points for OV 5 if "a victim's family member has suffered a serious psychological injury that may require professional treatment in the future." *Id*. There does not need to "be evidence that a victim's family member had a present intention to seek or receive professional treatment." *Id*. at 187. Accordingly, defendant's argument that OV 5 should have been assessed zero points because neither Cheryl nor Buchanan said that they would need to seek professional treatment for any psychological problems lacks merit.

Cheryl testified at defendant's trial about witnessing defendant kill Franklin. After defendant shot Franklin, Cheryl covered Franklin with her body to prevent defendant from shooting Franklin again. A detective who investigated the shooting described Cheryl as

"hysterical" at the hospital after the shooting. Cheryl spoke at defendant's sentencing hearing about how hard this situation had been on her, and how she was unable to forget the "evil things" that defendant had said about Franklin. Cheryl particularly agonized over defendant's use of a hollow point bullet to kill Franklin. Buchanan also spoke at defendant's sentencing hearing about how this situation was a "nightmare" that she hoped to wake up from. Buchanan also explained that dealing with Franklin's killing with her and Franklin's son had been difficult. Buchanan worried about their son growing up without Franklin.

We conclude that substantial evidence in the record supported assessing defendant 15 points for OV 5. Therefore, the trial court did not err.

## II. UPWARD DEPARTURE – DISPROPORTIONATE SENTENCE

Defendant next argues that the trial court violated the principle of proportionality when it departed upward from the sentencing guidelines range by nine months. We disagree.

The sentencing guidelines are advisory, but " '[s]entencing courts must . . . continue to consult the applicable guidelines range and take it into account when imposing a sentence . . . [and] justify the sentence imposed in order to facilitate appellate review.' " *People v Steanhouse*, 500 Mich 453, 470; 902 NW2d 327 (2017), quoting *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). This Court reviews for an abuse of discretion whether the trial court's upward departure was reasonable. *Steanhouse*, 500 Mich at 471. A trial court abuses its discretion if it violates the principle of proportionality. *Id*.

" 'A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness.' " *People v Carpenter*, 322 Mich App 523, 532; 912 NW2d 579 (2018), quoting *Lockridge*, 498 Mich at 392. When determining if a sentence is reasonable this Court must determine whether the trial court violated "the 'principle of proportionality' . . . 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 459-460, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). Factors for determining whether a sentencing departure is proportionate include:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (citations omitted), aff'd in part, rev'd in part on other grounds 500 Mich 453 (2017).]

The trial court, without specifically articulating that it was doing so, used a number of the aforementioned factors when it decided to depart from the sentencing guidelines for defendant's manslaughter conviction. The trial court criticized defendant's decision to "settl[e] the issue [with Franklin] with a gun," which the court described as a "criminal and unnecessary and horrible decision that caused tremendous pain to people who loved his cousin." The trial court also explained that defendant's "chances of rehabilitation curbing his criminal behavior one way

or another are minimal," and that rehabilitation would "be extremely challenging" for defendant because of defendant's "troubling criminal history." The court appeared to place particular emphasis on the seriousness of defendant's offense when it stated that "defendant took a life that [the trial court] deems as an unnecessary taking of a life." These factors were satisfied without regard to Cheryl's allegations that defendant had committed crimes not at issue at this trial. Accordingly, the trial court did not violate the principle of proportionality when it sentenced defendant to a minimum sentence nine months higher than the guidelines range because the trial court found the seriousness of the circumstances warranted an upward departure in this case.

### III. IMPROPER SENTENCE – VICTIM IMPACT STATEMENT

Defendant also argues that the trial court violated his right to be sentenced with only accurate information when it considered at the sentencing hearing Cheryl's victim impact statement which included unproven allegations. We disagree.

"This Court reviews a trial court's response to a defendant's challenge to the accuracy of a [presentence investigation report] for an abuse of discretion." *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008). The same standard applies when a defendant challenges the accuracy of a victim impact statement made at the defendant's sentencing hearing. *People v Mabin*, 313 Mich App 545, 551-552; 884 NW2d 314 (2015). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v McBurrows*, 322 Mich App 404, 411; 913 NW2d 342 (2017) (quotation marks and citations omitted).

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A sentence "based on inaccurate information" is invalid. *Id*. at 89 (quotation marks and citation omitted). This Court has said that a trial court must respond to inaccurate information in a presentence investigation report. *Maben*, 313 Mich App at 553. The trial court has "wide latitude" in responding, and "may determine the accuracy of the information, accept the defendant's version, or simply disregard the challenged information." *Id*. at 553-554 (quotation marks and citation omitted). "However, if the court chooses to disregard the challenged information, it must clearly indicate that it did not consider the alleged inaccuracy in determining the sentence." *Id*. at 554.

In this case, defendant did not challenge the accuracy of a victim impact statement contained in a presentence investigation report, but instead challenged the accuracy of an oral victim impact statement made at his sentencing hearing. Defendant's presentence investigation report indicated that Cheryl intended to make a statement at defendant's sentencing. As the mother of the deceased victim, Cheryl was entitled to speak at defendant's sentencing pursuant to MCR 6.425(E)(1)(c).

Although this case differs from *Maben* regarding the presentation of the victim impact statement, the content of the victim impact statement in this case was similar to the content of the victim impact statement in *Maben*. The Court described the victim impact statement in *Maben* as follows:

In this case, however, the information went beyond describing the impact of Maben's conduct. It included factual allegations about other uncharged crimes, including that Maben had killed cats in front of children, had a "bodyguard/hit man," and had "informed people" that he was going to kill the prosecutor, rape his wife, and kill his family. These allegations did not involve the offense or Maben's brother's subjective statements about the impact of Maben's crime. [*Id.* at 555.]

Similarly, Cheryl's victim statement included allegations that defendant planted drugs on Franklin and put a hit out on Franklin.

The trial court did not reply to defense counsel's concerns about Cheryl's allegations, and, in fact, may have even considered Cheryl's allegations when sentencing defendant. The trial court stated:

All right. Well this is a sad and unfortunate case. Hearing from the family is really, you know, it's troubling. It's a much more deeper [sic] and twisted family situation in terms of the relationship between the defendant and [Franklin] than what could kind of ever come out in a trial.

I mean—you know, I don't know how far back this goes. I don't know the exact nature of the relationships. And some of the things [Cheryl] discussed in terms of, you know, bringing these plants [drugs] to the house and this hollow-tip bullets and don't hit [defendant] cause [sic] you know he carries a gun, it's just a lot there to digest in terms of the relationship between the defendant and the Franklins.

Despite the similarities between the content of the victim impact statement in *Maben* and Cheryl's victim impact statement in this case, the different presentation of the two statements is determinative. This Court's concerns about the accuracy of presentence investigation reports stem from the fact that "the presentence report follows the defendant to prison; it may have ramifications for purposes of security classification or parole consideration when appropriate." *Id.* at 553. Oral victim impact statements do not implicate these concerns.

Further, even if the trial court did err and improperly considered the allegations Cheryl made in her victim impact statement at the sentencing hearing, the trial court's error would be "subject to harmless-error review." *People v Lyles*, 501 Mich 107, 117; 905 NW2d 199 (2017). Under harmless-error review, a defendant must show "that it is more probable than not that the error was outcome determinative." *Id.* at 117-118 (quotation marks and citation omitted). As previously discussed, there were sufficient reasons to support the trial court's decision to make an upward departure from the sentencing guidelines in this case without giving any consideration to Cheryl's victim impact statement at the sentencing hearing. Therefore, if the trial court erred by considering Cheryl's impact statement, doing so was harmless and does not warrant remanding to the trial court for resentencing.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello
/s/ James Robert Redford