*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

V

CHRISTOPHER JALEN LOWERY,

Defendant-Appellant.

UNPUBLISHED
May 14, 2020

No. 345646
Wayne Circuit Court
LC No. 17-008801-01-FH

Before: JANSEN, P.J., and METER and CAMERON, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] his guilty plea based conviction of human trafficking, forced labor, MCL 750.462b(1)[2]. Defendant was sentenced, as a third habitual offender, MCL 769.11, to 7 to 15 years' imprisonment. On appeal, defendant argues that the trial court incorrectly assessed points under offense variables (OV) 12, 13, and 14. We affirm.

## I. BACKGROUND

On March 27, 2017, defendant was arrested during an undercover operation conducted by the Southeast Michigan Trafficking and Exploitation Crimes (SEMTEC) task force. Officer Sterling Price set up a meeting with a woman, who was believed to be the victim of human trafficking. After meeting her at a motel and negotiating a half hour of sexual activity for $100, Officer Price accompanied the woman to the motel room next door, where she delivered the money

---

[1] *People v Lowery*, unpublished order of the Court of Appeals, entered November 5, 2018 (Docket No. 345646).

[2] MCL 750.462b(1) is the previous version of the statute that defendant pleaded guilty under, which stated, in pertinent part: "A person shall not knowingly subject or attempt to subject another person to forced labor or services by causing or threatening to cause physical harm to another person." The statute was amended, effective January 14, 2015. See 2014 PA 329. The current version of the statute states: "A person shall not knowingly recruit, entice, harbor, transport, provide, or obtain an individual for forced labor or services." MCL 750.462b.

to defendant. The SEMTEC task force arrived at defendant's room and arrested him. Defendant was initially charged with one count of accepting the earnings of a prostitute, MCL 750.457, one count of maintaining a house of prostitution, MCL 750.452, and one count of conducting a criminal enterprise, MCL 750.159i(1).

During trial, Detective Jeremy Quinn testified that, during his investigation, he discovered defendant had been incarcerated at the Wayne County Jail from November 1, 2016 to December 1, 2016. During this time, defendant made approximately 500 calls on the jail telephone. Jail calls occurring from November 1, 2016 through November 5, 2016, were played for the jury. Officer Nathaniel Knapper testified regarding the substance of these jail calls. In one call, Officer Knapper believed defendant asked the woman on the other end of the call to make $300 "by means of prostitution dates." Defendant stated that they could make $300 in "out calls" in the morning and $300 in "out calls" at night. Officer Knapper stated that an "out call" is when the person providing sexual services goes off site to provide sexual services. Officer Knapper also believed that defendant discussed needing funds earned from prostitution set aside so that his jail telephone account could continue to be replenished. Defendant was heard speaking to his mother, and requesting that she put money on his jail telephone account. Defendant was also heard discussing the recruitment of another female for the "prostitution activities that he's directing."

On the third day of trial, defendant pleaded guilty to one count of human trafficking, forced labor in exchange for the prosecution dropping the initial three charges. At the sentencing hearing, the court assessed 25 points for OV 12, 25 points for OV 13, and 10 points for OV 14. This appeal follows.

## II. DISCUSSION

Defendant argues that the trial court erred in assessing 25 points for OV 12, 25 points for OV 13, and 10 points for OV 14. Defendant asserts the trial court made several errors during sentencing by relying on defendant's jail telephone calls to score the relevant OVs. With respect to OVs 12 and 13, we disagree because defendant waived review of these OVs by failing to provide this Court with the jail telephone recordings. With respect to OV 14, we disagree because there was a preponderance of the evidence that defendant was the leader in a multiple offender situation.

"A trial court's findings of fact at sentencing must be supported by a preponderance of the evidence; this Court reviews a trial court's findings of fact for clear error." *People v Maben*, 313 Mich App 545, 549; 884 NW2d 314 (2015). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (quotation marks and citation omitted). "This Court reviews de novo whether the facts are adequate to satisfy the statutory criteria for scoring the variable." *Maben*, 313 Mich App at 549.

When calculating the sentencing guidelines, a sentencing court may consider all record evidence before it, including the contents of a presentence investigation report, plea admissions, and testimony presented at a preliminary examination or trial. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). "[T]he trial court may rely on inferences that arise from the record evidence when making the findings underlying its scoring of offense variables." *People v McFarlane*, 325 Mich App 507, 532; 926 NW2d 339 (2018).

## A. WAIVER

The appellant bears "the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). This burden includes providing this Court with exhibits offered into evidence. MCR 7.210(C). The failure to provide this Court with the relevant record waives further review of the issue. *People v Callon*, 256 Mich App 312, 332; 662 NW2d 501 (2003), citing *People v Anderson*, 209 Mich App 527, 535; 531 NW2d 780 (1995).

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. [*People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (quotation marks and citation omitted.]

Defendant argues that the trial court erred in assessing 25 points for OV 12. In order to assess 25 points for OV 12, the defendant must have committed "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person." MCL 777.42(1)(a). "If [the] defendant did not engage in any contemporaneous felonious criminal acts, the trial court [must] score OV 12 at zero points." *People v Light*, 290 Mich App 717, 721; 803 NW2d 720 (2010) (quotation marks and citations omitted; alterations in original). "[W]hen scoring OV 12, a court must look beyond the sentencing offense and consider only those separate acts or behavior that did not establish the sentencing offense." *Id.* at 723.

At sentencing, the prosecution argued that 25 points should be assessed for OV 12:

> We did hear on the record that [defendant] was encouraging and coercing these girls to participate in certain sexual acts; many times, multiple per day, including—and then giving him the money. So we have both the accepting earnings, as well as the trafficking, which would be a multiple count charge at that point. And I do believe that we have that, within 24 hours, numerous times throughout the course of the trial, and we request the score of 25.

> \* \* \*

> Your Honor, I do think we heard on the record that these calls were[, "Y]ou need to go make X number of dollars.["] It's a multiple date situation where these girls are having to do the dates multiple times, multiple different people, and they're forced to give him the money multiple times.

> I think we heard that he was accepting those earnings repeatedly. And money was going back on the phone. Money was being delivered to his mother. I think it's all there.

The trial court concluded that defendant's conversations, as heard on the jail calls played during the trial, supported assessing 25 points for OV 12:

Well, I do think that in this case, that OV 12, there is more than ample evidence that there were contemporaneous felonious criminal acts that were directed out of the jail cell and that were accomplished by the women that were working for him.

We have evidence that [defendant] told one of the women that if she made another $150, she could get her nails done. And another, with the Defendant, asked if she could get $230, she could quit until the next day. And he responded that they need another $70 and money for his phone calls, and mentions making $300 for outcalls in the morning and $300 for outcalls at night. And we heard multiple, as I say, calls during the course of the trial.

So I do believe that there is ample evidence to score 25 points for OV 12, which states that three or more contemporaneous felonious criminal acts involving crimes against a person were committed. And they were committed within 24 hours of the sentencing offense and it has not resulted in any separate convictions.

So I do believe that for OV 12, the scoring of 25 points is appropriate and factually based.

Defendant argues that the trial court erred because there was no evidence that defendant committed three or more contemporaneous felonies. As referenced above, the prosecution argued that the scoring of OV 12 should be scored using evidence from the recording of defendant's jail telephone calls. These recordings were played at trial and admitted as an exhibit, but were not transcribed for the record. Defendant did not provide a copy of the recordings on appeal, even after this Court specifically requested the recordings from defendant. Without these recordings, this Court is unable to determine the merits of defendant's argument, and therefore, defendant has waived this Court's review of OV 12. See *Callon*, 256 Mich App at 332; *Kevorkian*, 248 Mich App at 389.

Defendant also argues that the trial court erred by assessing 25 points for OV 13. "Under MCL 777.43, the trial court must score points under OV 13 on the basis of a defendant's felonious acts that constitute a continuing pattern of criminal behavior." *People v Bemer*, 286 Mich App 26, 33; 777 NW2d 464 (2009). "If there was no pattern of felonious criminal activity, the trial court must score OV 13 at zero points." *Id*., citing MCL 777.43(1)(g). The trial court must assess 25 points when the sentencing offense "was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c); *Bemer*, 286 Mich App at 33. "When determining the appropriate points under this variable, 'all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction.' " *Id*., quoting MCL 777.43(2)(a).

At sentencing, the prosecution argued that 25 points should be assessed for OV 13:

We heard on the record from the Defendant, in his words, this is what I do. This is how I do it and this is how I make money and this is how I'm going to continue doing it, basically speaking of the action of prostituting these girls.

-4-

At the same time, we had an event where we know he was at after the 500 jail calls, we had an event in March of 2017 that was testified to, where that pattern of behavior was still continuing all the way through March.

So we know all the way through November, based on the jail calls we heard, that was a continuous pattern of criminal behavior of prostituting girls, accepting earnings.

We just saw that there was over four, five, six, seven times of money being placed onto his jail phone, so that would be accepting earnings. And then going all through March, there was clearly accepting earnings and prostituting girls there. So we would argue for a score of 25.

The court, in response, agreed with the prosecution and assessed 25 points for OV 13, stating the following factual findings:

I do believe that OV 13 should be scored at 25 points based upon the record that we have here. As the Assistant Attorney General has said, all of his arguments in favor of the scoring are factually based and facts that this Court is aware of, based upon the trial and presiding over this case. There was an organized criminal activity here that was ongoing. And so organized that it was being conducted out of the Wayne County Jail while [defendant] was incarcerated.

So I do believe that OV 13 should properly be scored at 25 points because it clearly was a part of a pattern of felonious criminal activity involving three or more crimes against a person. So OV 13 will be scored at 25.

The trial court agreed with the prosecution that the recordings of defendant's jail telephone calls supported the assessment of 25 points for OV 13. However, as discussed above, defendant failed to provide this Court with the jail telephone recordings, despite this Court's request to provide the recordings. Thus, defendant has waived this Court's review of the challenge to OV 13. See *Callon*, 256 Mich App at 332; *Kevorkian*, 248 Mich App at 389.

B. OV 14

Defendant argues that the trial court erred by assessing 10 points for OV 14 because he was the only person charged in this case. We disagree.

OV 14 addresses the offender's role in the offense, and when sentencing, "[t]he sentencing court must assess 10 points if '[t]he offender was a leader in a multiple offender situation.' " *People v Gibbs*, 299 Mich App 473, 493; 830 NW2d 821 (2013), quoting MCL 777.44(1)(a) (second alteration in original). Moreover, when scoring OV 14, "[t]he entire criminal transaction should be considered," MCL 777.44(2)(a), and "[i]f 3 or more offenders were involved, more than 1 offender may be determined to have been a leader," MCL 777.44(2)(b).

During the sentencing hearing, the court assessed 10 points for OV 14, stating:

Well, clearly, there is evidence that there was an operation here. There was a clear operation. They were operating out of that motel room. There's evidence that they were looking at locations to operate so they would not be in a single house. Multiple people were involved in terms of the women. And the mother was involved in that. There was [sic] telephone conversations that we did hear, that would factually confirm that [defendant] was not the only person who is operating this prostitution ring. But, clearly, he was the leader. He was the organizer, the brains, and the one who was directing it.

The trial court did not err in assessing 10 points for OV 14. "A 'multiple offender situation' is one in which more than one person—up to several or many persons—participates in a violation of the law." *People v Ackah-Essien*, 311 Mich App 13, 38; 874 NW2d 172 (2015). At trial, Officer Knapper testified that defendant could be heard speaking to his mother on the jail calls. During the preliminary examination, Officer Andrew Carriger testified that defendant could be heard on one of the calls telling the other caller to "[g]et the money for me, because my mom's going to pick it up[.]" Officer Knapper testified that, on November 3, 2016, defendant was heard asking his mother to put $50 into his jail telephone account. At the beginning of the November 3, 2016 call, the automated jail call recording stated that defendant had approximately one dollar left in his account. When defendant made a telephone call on November 4, 2016, he had $50.16 in his jail telephone account. On November 5, 2016, when defendant made a telephone call, he had $4.66 in his jail telephone account, and when defendant made his next call, he had $50.08 in his account, which Officer Knapper testified was equivalent to the amount defendant requested that his mother put in his account during the previous call. On the basis of the evidence before the court, the court could infer that defendant's mother was receiving money earned from prostitution and providing it to defendant. Therefore, there was more than one person involved in this operation, and thus, defendant was involved in a multiple offender situation.

Defendant also argues that there is no evidence that he was the "leader." Although MCL 777.44 does not define "leader", according to dictionary definitions, "[t]o 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *People v Dickinson,* 321 Mich App 1, 22; 909 NW2d 24 (2017) (quotation marks and citation omitted; alteration in original). Accordingly, "for purposes of an OV 14 analysis, a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent." *Id*. (quotation marks and citation omitted).

Officer Knapper testified that on one telephone call defendant was referred to as "Daddy," which is a common term used in prostitution for the person in charge of the situation. In another call, defendant told a woman that he was her boss. Moreover, defendant admitted at his plea hearing that the women he spoke to on the telephone engaged in prostitution at his direction. Defendant was also heard discussing the recruitment of another woman for his prostitution activities. Thus, there was evidence to support the trial court's finding that defendant was the leader in a multiple offender situation. The court did not err in assessing 10 points for OV 14.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Thomas C. Cameron