*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MORRIS ALLEN BROWN,

        Defendant-Appellant.

UNPUBLISHED
September 12, 2024

Nos. 362925; 362929
Bay Circuit Court
LC Nos. 2020-010230-FH;
        2019-010679-FC

Before: PATEL, P.J., and YATES and SHAPIRO,* JJ.

PER CURIAM.

Defendant was convicted at a jury trial of armed robbery, MCL 750.529, and intimidating a witness, MCL 750.122(7)(b). The trial court thereafter sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve consecutive prison terms of 30 to 45 years for the armed-robbery conviction and 5 to 15 years for the witness-intimidation conviction. In these consolidated appeals, defendant appeals of right his convictions and his sentences. Defendant first challenges his convictions, arguing that the trial court erred when it denied his request to undergo a forensic evaluation to determine his competency to stand trial. He also contends that he is entitled to a new trial in order to present an insanity defense, either because of newly discovered evidence or because his trial counsel was ineffective for failing to present an insanity defense. Additionally, defendant contests his sentences, claiming the trial court erred in scoring offense variable (OV) 3 and OV 4. We affirm his convictions as well as the sentence for the armed-robbery conviction. But we vacate the sentence for witness intimidation and remand for the purpose of resentencing defendant on that conviction because the trial court improperly assessed 10 points for OV 4 in scoring that offense.

## I. FACTUAL BACKGROUND

In September 2019, the victim stopped at a convenience store and then left on his bicycle. After leaving the store, the victim stopped on the side of the road to permit two cars to pass him. The first car did just that, but the second car, driven by defendant, stopped near the victim and then accelerated and ran over the victim. As the victim was lying on the ground, defendant got out of

---

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

his car and took the victim's keys and his wallet, which contained approximately $100. The victim suffered serious injuries. Instead of calling 911, the victim called his wife and his sister because he believed he was going to die.

Before running over the victim, defendant was at the same convenience store as the victim. Police officers were able to identify defendant as the perpetrator after reviewing surveillance video from that store. The police eventually found the vehicle that defendant was driving that night and discovered damage to the vehicle that was consistent with hitting the victim's bicycle. The police also discovered blood containing the victim's DNA on the underside of the vehicle.

Defendant ultimately was arrested. While defendant was in jail, he called an acquaintance, Anthony Arocha,[1] and asked him to threaten the victim not to testify. Arocha went to the victim's house and threatened him.

On March 7, 2022, the day before the trial, defense counsel filed a motion to refer defendant for a forensic evaluation of his competence to stand trial and his criminal responsibility. Defense counsel stated that he had just learned that defendant had been diagnosed with schizophrenia and bipolar disorder, that defendant was still experiencing symptoms related to the conditions, and that defendant did not seem to understand the plea offer he had just rejected. The trial court conducted a hearing that day. Defendant testified that he had been diagnosed with "[s]chizoaffective disorder, antisocial personality disorder, and bipolar," and he had also attempted suicide multiple times. He stated that the symptoms of his conditions were "partially" affecting his ability to understand what was being discussed in court and that he did not remember "half of what was said in the courtroom" because he "kinda zonked out a little bit." Defendant explained he also suffered "from voices and things of that nature," but he "wouldn't say hallucinations." He admitted that he was able to follow the conversation he had with the prosecutor at the hearing and that he understood he was "charged with a robbery and a—stuff that I said over the phone."

The trial court opined that defendant's "presentation today does not indicate to me a person that doesn't understand these proceedings," because he was "lucid" and able to provide appropriate answers to questions. The trial court also reviewed the recording of a hearing that had taken place on the previous Friday and noted that defendant "seemed to understand everything that was said, and when he didn't, he asked questions." Therefore, the trial court denied defendant's request for a forensic evaluation, believing it was a "delay tactic."

After defendant's trial and sentencing, he moved for a retrospective forensic examination. He attached in support a large volume of documents he had obtained concerning his mental health. Those records indicated that defendant had been diagnosed with antisocial personality disorder, borderline personality disorder, cocaine use disorder, and "Schizoaffective disorder, Bipolar type." The prosecution tendered a forensic evaluation that defendant had received in 2017 in connection with earlier criminal charges, which found defendant competent at that time. Generally, all of the documents revealed that defendant had a long history of serious mental illness, including numerous suicide attempts, hearing "voices," and suffering from schizoaffective disorder, bipolar disorder, and antisocial personality disorder. One of the documents indicated that defendant's voices were

---

[1] Arocha later accepted a plea deal and testified against defendant.

"commanding," while none of the other discussions of "voices" indicated that they were anything more than conversational or mistaken for a television in the background. One document indicated that defendant's intelligence was at the low end of average, while another document indicated that defendant was both intelligent and manipulative. Some documents noted that defendant had poor impulse control, but only regarding self-injurious behaviors or in response to anger or frustration. Nothing suggested defendant was not oriented to what was happening around him. The trial court held a hearing on October 5, 2023, treated defendant's motion as a request to reconsider the pretrial denial of defendant's March 7, 2022 request for a forensic examination, and denied the motion.

This appeal followed. After defendant filed his brief on appeal, he moved in this Court for a remand for a retrospective forensic examination or a new trial. We denied that motion.

## II. LEGAL ANALYSIS

On appeal, defendant contends that the trial court erred in denying his request for a forensic evaluation to determine his competency to stand trial. In addition, defendant claims a new trial is necessary to permit him to present an insanity defense. He asserts that he is entitled to a new trial either because his medical records are newly discovered evidence or because defense counsel was ineffective for failing to present that defense at trial. Finally, defendant challenges his sentences, arguing that the trial court erred in scoring OV 3 and OV 4. We will address each of his arguments in turn.

## A. FORENSIC EVALUATION OF COMPETENCY

Defendant claims the trial court erred when it denied his request for a forensic examination to determine his competency to stand trial. Defendant first made this request before trial, and then he renewed the request after sentencing. A trial court's determination of a defendant's competence is subject to review for an abuse of discretion. *People v Kammeraad*, 307 Mich App 98, 138; 858 NW2d 490 (2014). A trial court's decision whether to order a competency examination is similarly reviewed for an abuse of discretion. *Id*. at 140. "An abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. (quotation marks, brackets, and citation omitted). Because the trial court is "able to personally observe defendant's behavior and conduct, hear live defendant's remarks and the tone of and inflections in his voice, and directly assess defendant's demeanor, attitude, and comments, . . . we generally defer to the court's findings on such matters." *Id*. at 141.

A defendant has a due-process right not to be tried or convicted while incompetent to stand trial, *id*. at 137, but "[a] defendant to a criminal charge shall be presumed competent to stand trial." MCL 330.2020(1). Under Michigan law, a defendant "shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." *Id*. "The [trial] court shall determine the capacity of a defendant to assist in his defense by his ability to perform the tasks reasonably necessary for him to perform in the preparation of his defense and during his trial." *Id*.

Based "[o]n a showing that the defendant may be incompetent to stand trial, the court must order the defendant to undergo an examination by a certified or licensed examiner of the center for

forensic psychiatry or other facility officially certified by the department of mental health to perform examinations relating to the issue of competence to stand trial." MCR 6.125(C)(1); see also MCL 330.2026(1). A trial court does not abuse its discretion in failing to order a competency examination whenever "[a] reasonable judge . . . could logically have rejected the proposition that defendant was 'incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner.' " *Kammeraad*, 307 Mich App at 140. But when there is "at least a bona fide doubt as to whether defendant was competent to stand trial[,] . . . it [is] error for the trial court to fail to have defendant's competence reevaluated prior to trial." *People v Harris*, 185 Mich App 100, 103; 460 NW2d 239 (1990). "Evidence of a defendant's irrational behavior, a defendant's demeanor, and a defendant's prior medical record relative to competence are all relevant in determining whether further inquiry in regard to competency is required." *Kammeraad*, 307 Mich App at 139.

Here, the trial court determined that defendant was competent to stand trial, and therefore denied defendant's pretrial request for a forensic examination. In the proceedings leading up to defendant's motion, defendant had personally addressed the court on several occasions and gave every indication that he was lucid and understood the proceedings. When defendant attempted to replace his attorney, it was because he believed that his attorney was not communicating with him. That attorney explained that he and defendant disagreed about how to proceed with the case, but he indicated that he and defendant had discussed the case extensively and he did not suggest that defendant was otherwise a challenging client. With defendant's final trial counsel, the transcripts show that defendant consulted with counsel many times and was an active, competent participant in the proceedings. Defendant gave the impression that he understood the plea offer. Even at the hearing on his motion for a competency evaluation, defendant provided little reason to doubt his competence. The transcripts make clear that defendant understood the charges against him, that he understood he faced at least a 25-year minimum sentence if convicted and an 18-year minimum sentence if he accepted the plea offer, and that he declined an offer that would have resulted in an 18-year minimum sentence.

Although defendant had been diagnosed with mental-health conditions, the evidence given to the court at that time did not reflect that defendant was incapable of understanding the nature of the charges against him or knowingly assisting in his defense. The record indicates that defendant understood the charges and assisted in his defense. Thus, the trial court did not abuse its discretion in rejecting defendant's pretrial motion for a forensic evaluation.

Defendant also contests the trial court's denial of his posttrial motion, which requested that he be referred for a forensic examination. After defendant was convicted at his jury trial, he moved for a retrospective competency examination. He attached a substantial number of documents from the Michigan Department of Corrections, the Bay County Jail, Bay County, and Saginaw County detailing his mental-health history. The documents indicate that defendant is a person with serious mental illness and challenges with everyday functioning in and out of a prison or jail environment. Defendant has a very long history of suicide attempts, impulsive and antisocial behaviors, hearing "voices," and commitments for involuntary mental-health treatment. Nevertheless, incompetence is more specific than just mental illness, even severe mental illness. All but one document reflected that defendant's voices were not commanding or even particularly distressing. An attorney opined that defendant had "remarkable insight into his condition," and a document reflected that defendant was intelligent and manipulative. None of the documents suggested that defendant was incapable

of understanding the nature of the charges against him or of knowingly assisting in his defense. If anything, the records suggest exactly the opposite. The 2017 forensic evaluation, to the extent that it has any probative value, considered essentially the same array of mental-health challenges and drew the same conclusion: defendant was mentally ill but not incompetent. Consequently, on this record, we conclude that the trial court did not abuse its discretion in denying defendant's posttrial request for a forensic evaluation.[2]

## B. INSANITY DEFENSE

Next, defendant insists he is entitled to a new trial in order to present an insanity defense. Defendant asserts that a new trial is warranted either because the medical records attached to his posttrial motion constituted newly discovered evidence or because trial counsel was ineffective for failing to discover that evidence earlier and failing to pursue an insanity defense. We disagree that either of these bases entitles defendant to a new trial.

## 1. NEWLY DISCOVERED EVIDENCE

A trial court's decision whether to grant a new trial based on newly discovered evidence is subject to review for an abuse of discretion. *People v Cress*, 468 Mich 678, 691-692; 664 NW2d 174 (2003). "For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *Id*. at 692. "[E]vidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial." *People v Rao*, 491 Mich 271, 281; 815 NW2d 105 (2012).

Here, defendant's argument fails because the identified evidence was not newly discovered and defendant has not shown that the new evidence would have made a different result probable on retrial. See *Cress*, 468 Mich at 692. The evidence that defendant presents as newly discovered consists of his medical records. Defendant claims this evidence was "newly discovered" because defense counsel brought it to the trial court's attention as soon as he discovered it, and defendant's mental-health problems intensified as the trial approached. Defendant focuses exclusively on what defense counsel knew and when he knew it. But this inquiry focuses not only on defense counsel's knowledge, but also what defendant himself knew. See *Rao*, 491 Mich at 281. Defendant does

---

[2] In his motions before the trial court, defendant asserted that the trial court should order a forensic examination of defendant for the dual purposes of assessing defendant's competency to stand trial and his criminal responsibility for the charged crimes. Whether defendant could be held criminally responsible—the insanity defense—is an affirmative defense that defendant bears the burden of establishing. Defendant has not presented this Court with any authority to suggest that the trial court was under a duty to assist defendant in the preparation of that defense by way of ordering a forensic examination. Therefore, our review of the trial court's denial of defendant's two motions requesting a forensic examination is limited to the context of examining defendant's competency to stand trial.

not allege, let alone establish, that he was unaware of this evidence at the time of trial. Defendant has thus failed to establish that the evidence was newly discovered and he is entitled to a new trial.

Additionally, defendant has not established that the evidence would have made a different result at retrial probable. See *Cress*, 468 Mich at 692. Defendant suffered from at least one mental illness, but defendant was not "insane" unless, as a result of his mental illness, he either lacked the capacity to appreciate the nature and quality of the wrongfulness of his conduct or to conform his conduct to the requirements of the law. MCL 768.21a(1). Absent those circumstances, a mental illness does not otherwise constitute a defense of legal insanity. *Id*. None of defendant's evidence suggests he was unable to understand the nature of his conduct or was divorced from reality beyond "hearing voices." Even if defendant suffered from serious mental illnesses, nothing in defendant's evidence suggests he lacked the substantial capacity to understand the wrongfulness of his conduct. Additionally, defendant has failed to explain how the medical records establish that he was unable to conform his conduct to the requirements of the law. Defendant argues that the evidence about his history of mental illness would have offered an explanation for defendant's otherwise-irrational behavior of hitting the victim with his car. But defendant fails to explain how the medical records establish that defendant met the legal definition of "insane" so as to afford a defense to the charged crimes. Therefore, defendant has not established that a different result would have been probable on retrial if he were permitted to present his medical records as part of an insanity defense.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

A defendant who requests a new trial based on ineffective assistance of counsel must show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Furthermore, the defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Without the benefit of any supporting analysis, defendant contends that defense counsel's performance fell below an objective standard of reasonableness when counsel failed "to obtain the evidence, file a notice of insanity defense, obtain the referral to the Center, or otherwise use the evidence to help him negotiate a plea resolution with his client." This argument is not persuasive. Defendant acknowledges that trial counsel did not discover defendant's mental-health issues until the eve of trial. That dovetails with the position defendant's appellate counsel took at the hearing on his posttrial motion, where he withdrew his claim of ineffective assistance of counsel because he was persuaded it was "unreasonable to have expected [trial counsel] to have found" the medical records and it would have been "asking too much of trial Counsel[.]" In a stark reversal, defendant now takes the opposite position, insisting that trial counsel's performance fell below an objective standard of reasonableness because counsel did not obtain defendant's medical records before trial and did not take actions flowing from the receipt of those medical records. "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *In re Estate of Huntington*, 339 Mich App 8, 27; 981 NW2d 72 (2021) (quotation marks and citation omitted). Accordingly, we are not persuaded

by defendant's claim that defense counsel was ineffective for failing to obtain defendant's medical records before trial.

Beyond that, defendant's attorney moved for a referral for defendant to obtain a forensic examination, but the trial court denied that request. Defendant now asserts that trial counsel was ineffective for failing to "obtain the referral to the Center," but defendant does not explain how or why trial counsel's handling of that motion was deficient. Thus, defendant has failed to establish that his trial counsel's performance fell below an objective standard of reasonableness. And even if trial counsel's representation fell below an objective standard of reasonableness, defendant has not established that, but for the deficient performance of defense counsel, a reasonable probability exists that the outcome of the trial would have been different. Therefore, defendant has not shown that he was prejudiced by the lack of an insanity defense.

## C. SENTENCING GUIDELINES

Defendant challenges the sentences imposed for both of his convictions, asserting that the trial court incorrectly scored his sentencing guidelines for armed robbery and witness intimidation. Specifically, defendant contests the trial court's scoring of OV 3 and OV 4. When addressing the scoring of sentencing variables, this Court reviews the trial court's factual findings for clear error and reviews de novo whether the facts meet the statutory criteria for scoring the variables. *People v Maben*, 313 Mich App 545, 549; 884 NW2d 314 (2015). A finding of fact is clearly erroneous if we are definitely and firmly convinced that the trial court made a mistake. *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014). "The proper interpretation and application of the statutory sentencing guidelines is a question of law that this Court reviews de novo." *Id*. at 243. The trial court's factual findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). When scoring sentencing guidelines, "the trial court may consider all record evidence, including the presentence investigation report (PSIR), plea admissions, and testimony." *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021). "The trial court may also consider victim-impact statements, and may make reasonable inferences from evidence in the record." *Id*.

## 1. OFFENSE VARIABLE 3

Regarding his sentence for armed robbery, defendant argues that the trial court erred when it assessed 25 points for OV 3. Defendant argues that the trial court should have only assessed 10 points for that offense variable because, although the victim suffered "terrible" injuries, there was no evidence that those injuries were life-threatening or permanently incapacitating. OV 3 focuses on the physical injury to a victim. MCL 777.33(1). If "[b]odily injury requiring medical treatment occurred to a victim," the trial court should assess 10 points. MCL 777.33(1)(d). But if "[l]ife threatening or permanent incapacitating injury occurred to a victim," the trial court should assess 25 points. MCL 777.33(1)(c). Although the statute does not define "life threatening," this Court has explained that it "require[s] some evidence indicating that the injuries were, in normal course, potentially fatal." *People v Chaney*, 327 Mich App 586, 590-591; 935 NW2d 66 (2019). Because "there are many conditions that if not treated can become life-threatening," this "review must take into account the effect of medical treatment." *Id*. at 591 n 4. The statute also does not provide a definition of "permanently incapacitating." This Court has ruled that the trial court did not abuse its discretion in scoring OV 3 at 25 points on the basis of a permanently incapacitating injury when

the evidence showed the victims "had been severely injured in ways that continued to significantly incapacitate them in their daily lives, and that it was very possible they would never fully recover." *People v Teike*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363705); slip op at 3.

Here, the victim suffered a broken pelvis, multiple fractured ribs, a broken leg, a collapsed lung, and a fractured shoulder when defendant ran over the victim with his car. In the immediate aftermath, the victim went in and out of consciousness. The victim testified that he called his wife and sister instead of calling 911 because he "didn't think [he] was going to make it." Initially, he was transported to a hospital emergency department, but he was promptly transferred to a different hospital because of the severity of his injuries. A detective visited the victim in the hospital a week after the incident and described him as being "in terrible condition" with supports still piercing his body to hold it together. Additionally, there was evidence that the victim had no physical or mental limitations before defendant ran over him, but afterward he had trouble walking, breathing, lifting or moving heavy things, and he suffered from anxiety, sleep disturbances, and memory deficits.

At sentencing, the trial court observed that the victim had been "in the hospital for months, he broke many bones, he has cognitive problems as a result of his head injury, he talked at length about the interference of these injuries still cause him some years later in his daily activities." The trial court found that those injuries clearly met the threshold to score OV 3 at 25 points. An injury may be "permanently incapacitating" when the victim was "severely injured in ways that continued to significantly incapacitate them in their daily lives," even if there is a possibility that the victim might recover. *Id*. The evidence here establishes that the victim's injuries fall squarely within that definition. Thus, we are not definitely and firmly convinced the trial court erred by determining that the victim's injuries from the armed robbery were potentially life-threatening and permanently incapacitating, so OV 3 was properly scored at 25 points.

## 2. OFFENSE VARIABLE 4

Defendant also argues that the trial court erred by scoring OV 4 at 10 points when it should have been assessed zero points in scoring the guidelines for both convictions. He asserts that the only evidence supporting 10 points for each conviction was that the victim felt fear while the crime was being committed, and that there was no evidence to suggest that the victim incurred a serious psychological injury. We conclude that the trial court properly assessed 10 points for OV 4 when calculating defendant's sentencing guidelines for his armed-robbery conviction, but we agree with defendant that the evidence did not support assessing 10 points for OV 4 in scoring the sentencing guidelines for the witness-intimidation conviction.

OV 4, which addresses the psychological injury to a victim, see MCL 777.34(1), should be scored at 10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim," MCL 777.34(1)(a), regardless of whether treatment has been sought. MCL 777.34(2). This offense variable should be scored at zero points if "[n]o serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(c). "[P]oints for OV 4 may not be assessed solely on the basis of a trial court's conclusion that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim[.]" *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017). In addition, "evidence of fear while a crime is being committed, *by itself*, is insufficient to assess points for OV 4." *Id*. In scoring OV 4, the trial court is "limited

to solely considering the sentencing offense[.]" *People v Biddles*, 316 Mich App 148, 167; 896 NW2d 461 (2016).

Here, evidence concerning the armed robbery reveals that the victim believed he was going to die after defendant ran over him. Defendant correctly contends that the victim's fear during the armed robbery is insufficient to establish that he suffered a serious psychological injury. *White*, 501 Mich at 162. But defendant overlooks the evidence establishing that the victim suffered from severe anxiety resulting from the armed robbery. The victim's wife testified that she had observed mental differences in the victim, including "anxiety real bad," and that he did not sleep well. The victim's neighbor testified that she had noticed personality changes in the victim since the incident, and he now had "[t]remendous anxiety." Taken together, that evidence could reasonably establish that the victim suffered a "serious psychological injury" from the armed robbery. See *White*, 501 Mich at 165 n 3 (the victim's fear during a crime "may be highly relevant" in the scoring of OV 4 and may be considered with other facts). Hence, the trial court did not err by scoring OV 4 at 10 points for the armed robbery sentence.

The trial court likewise assessed 10 points under OV 4 in scoring the sentencing guidelines for defendant's witness-intimidation conviction. We conclude that the record does not support a finding that the victim suffered a "serious psychological injury" arising from that crime. Although the victim testified that he felt threatened, feeling fear during a crime does not establish a "serious psychological injury" without some other evidence of lasting harm. *Id*. at 164-165. Here, no such evidence exists. The victim moved from his home soon after he received the threatening visit from Arocha, but that move was in process before Arocha's visit. The testimony supporting the scoring of OV 4 for the armed-robbery conviction revealed the impact that that offense had on the victim, but that evidence is not applicable to the scoring of OV 4 for the witness-intimidation offense. See *Biddles*, 316 Mich App at 167.

Removal of the 10 points assessed under OV 4 from the scoring of defendant's sentencing guidelines for the witness-intimidation offense lowers the applicable guidelines range, so we must remand that case for resentencing on the witness-intimidation conviction. *People v Horton*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 360726); slip op at 2. Thus, we vacate defendant's sentence in Docket No. 2020-010230-FH and remand for resentencing on the witness-intimidation conviction. In all other respects, we affirm defendant's convictions and sentences.

Affirmed in part, vacated and remanded in part. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Christopher P. Yates
/s/ Douglas B. Shapiro