*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 25, 2024

Plaintiff-Appellee,

v

No. 362870
Shiawassee Circuit Court

JOHN RONALD ESPIE,

LC No. 1999-002999-FC

Defendant-Appellant.

Before: SWARTZLE, P.J., and SERVITTO and GARRETT, JJ.

PER CURIAM.

Defendant killed the victim, Nathan Nover, when defendant was 16 years old. The trial court sentenced defendant to mandatory life without parole (LWOP) for his conviction of first-degree murder. Following the United States Supreme Court's decision in *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and enactment of MCL 769.25 and MCL 769.25a, defendant was resentenced to 40 to 60 years of imprisonment. Defendant now appeals as of right. We reverse in part and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

On November 25, 1998, Nover, who worked for the Shiawassee County Probate Court, was transporting defendant back to a juvenile-detention facility following a neuropsychological evaluation. After defendant did not return to the detention facility, and Nover was reported missing, defendant was found in an Indiana hotel room. Defendant told an arresting officer that Nover had tried to sexually assault him, and defendant had strangled Nover. Nover's body was found along a dirt road in Michigan, and an autopsy showed that he had died from strangulation.

At trial, a jury found defendant guilty, and the trial court sentenced him to mandatory LWOP. The September 10, 1999, judgment of sentence did not include any form of financial assessment, although the trial court had entered an order on January 20, 1999, appointing trial counsel for defendant on the basis that he was indigent and lacked adequate funds to retain an attorney. That order included a provision requiring defendant to pay $30 per week, beginning on January 25, 1999, toward his court-appointed attorney fees. On February 2, 2005, the trial court entered an order to remit prisoner funds, stating that defendant owed a balance of $11,428 related

to the September 10, 1999, judgment. Defendant attempted to challenge the remittance order, but the trial court denied his motions, and this Court denied his delayed application for leave to appeal.

Defendant became eligible for resentencing when the United States Supreme Court determined in *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016), that *Miller* was to be given retroactive effect.

Defendant's resentencing occurred in August 2022. The Presentence Investigation Report (PSIR) used at defendant's resentencing was composed of three different reports. Agent Matthew Minton prepared the cover of the report for the August 2022 resentencing, and it provides preliminary information concerning defendant's conviction, prior record, and personal history, and a sentencing recommendation from the Department of Corrections (DOC). The cover was followed by a report originally prepared by Agent Martin for defendant's September 1999 sentencing (the Martin report). Agent Minton modified the report by adding new information before defendant's resentencing. Additionally, the Martin report incorporates a report that was prepared by Agent Meredith Thompson in February 1999 for defendant's convictions of unlawful driving away an automobile and uttering-and-publishing (the Thompson report).

Defendant filed a motion requesting preparation of a new PSIR, alleging that the PSIR contained several errors and arguing that it would be more efficient to order a new PSIR than to address the errors contained in the combined reports. The trial court denied defendant's motion, but held that defendant's challenges to the PSIR content would be addressed at resentencing.

Defendant argued at the resentencing hearing that the Thompson report should be removed from the PSIR because it was irrelevant and stale. The trial court denied defendant's request, stating that "in the interest of thoroughness, the report will remain as written and as attached." The trial court agreed, however, that the updates from the Thompson report should be moved to an earlier part of the PSIR.

Defendant also made several specific challenges to the PSIR. Defendant argued that the maximum penalty reflected on the cover page referred to life imprisonment, rather than the 60-year maximum sentence applicable to defendant. The trial court overruled defendant's objection, reasoning that life imprisonment was the maximum statutory penalty, even if the court's sentencing discretion was limited in this case.

Next, defendant argued that a statement that defendant "does suffer from numerous mental health difficulties and is on numerous medications" should be struck because the information was no longer accurate. The prosecutor opposed defendant's request because the statement accurately reflected defendant's history. The trial court allowed for a more recent psychological report to be included in addition to the statement.

Defendant additionally challenged statements indicating that defendant was becoming more violent in his home before this incident. The statements relate to a letter in defendant's probate court file authored by caseworker Rachel Beckley on July 8, 1998, in which she stated that defendant had "become progressively more violent at home, getting into fights with family members, being verbally abusive and throwing things, at which point he will then take off from the house." Defendant argued that the assertions were inaccurate because Beckley clarified in

sworn testimony that defendant's *home* was becoming increasingly more violent—not defendant. Because defendant could not obtain a transcript of the pertinent testimony, defendant relied on a transcript from later proceedings in which defense counsel at those proceedings explained that Beckley had testified that defendant was not becoming more violent, and defense counsel opined that Beckley's concern was related to "escalating violence in the home in general." The prosecutor objected to striking the statements, arguing that Beckley's letter supported the assertion and that defendant had been "assaultive," even if not physically violent. The trial court agreed with the prosecutor and overruled the objection.

Next, defendant argued that the characterization of Nover as a transportation officer was inaccurate. The trial court disagreed, reasoning that the "transportation officer" label was "as fitting as any." Defendant additionally challenged the inclusion of information about a misconduct he had received in prison in 2014 on the basis that it was a "minor ticket" and would not be considered by the parole board. The prosecutor objected to defendant's challenge, and the trial court found that it could still consider the misconduct. Further, defendant requested the inclusion of more information on his employment and education while in prison. The trial court ordered that Agent Minton add certain information, including that defendant had received his GED and continuing-education credits through the University of Michigan Dearborn.

The trial court also noted at one point about Agent Minton's updates to the PSIR, that "Agent Minton kind of comes in and out of quoting and sometimes it's a little difficult to discern whether or not he's quoting from the original or he's updating." After addressing the PSIR, the defense argued that defendant had a positive record in prison and that defendant "epitomize[d] the rehabilitative ideal that was discussed in *Miller*." Defendant admitted that he strangled Nover without cause or justification and then lied when he accused Nover of molesting him. Defendant stated that he was responsible for what happened, was haunted by his actions, and apologized to the Nover family. Several friends and family members of the victim also gave statements. The trial court resentenced defendant to 40 to 60 years of imprisonment. In regard to ordered fees, the trial court told defendant that he had one financial obligation to the court for court costs and attorney fees, totaling $3,077.80, which defendant had already paid.

The judgment of sentence following the resentencing ordered defendant to pay $3,586.10 for attorney fees, due March 5, 1999. The next day, a deputy court clerk executed a document declaring that the obligation at issue in the February 2, 2005, remittance order had been paid in full as of August 11, 2022.

Defendant now appeals. Defendant additionally filed a number of motions, including a motion for remand for the trial court to order the probation officer to amend the PSIR as the trial court ordered at resentencing. Defendant alleged there were changes that the trial court had ordered to the PSIR that the probation agent did not make. The motion to remand was denied without prejudice by a prior panel.

## II. ANALYSIS

### A. THE PSIR

Defendant first argues that the trial court erred by failing to consider sufficiently his youth as a mitigating factor, resulting in a disproportionate sentence. In his Standard 4 brief, defendant

raises several challenges concerning the PSIR used at resentencing. Because the trial court erred by failing to order certain corrections to the PSIR, this Court need not address the question of sentence proportionality at this time.

We review for an abuse of discretion claims of error regarding a trial court's rulings on PSIR challenges. See *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009). "A court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes." *Id*.

A trial court exercising its sentencing discretion must tailor the sentence to the particular circumstances of the offense and offender. *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). The PSIR "is a vital and necessary component of this effort to prescribe informed, individualized punishment in felony matters," and it must be complete, accurate, reliable, and reasonably updated. *People v Triplett*, 407 Mich 510, 514-515; 287 NW2d 165 (1980). When a defendant challenges information in a PSIR, a "court must allow the parties to be heard regarding the challenge, and make a finding with respect to the challenge or determine that a finding is unnecessary because it will not take the challenged information into account in sentencing." *People v Maben*, 313 Mich App 545, 553; 884 NW2d 314 (2015) (cleaned up). Once an effective challenge has been raised, the prosecution bears the burden of proving the challenged fact by a preponderance of the evidence. *People v Norfleet*, 317 Mich App 649, 669; 897 NW2d 195 (2016). If the court agrees with the challenge, it must order the probation officer to correct or delete the information. *Maben*, 313 Mich App at 553.

Defendant specifically argues that the trial court abused its discretion by denying defendant's request for a new PSIR and requiring that the Thompson report be attached to his PSIR in its original form, without addressing the challenges defendant has to that report. Although a "completely new report" is not necessarily required for resentencing, *People v Martinez (After Remand)*, 210 Mich App 199, 202; 532 NW2d 863 (1995), abrogated on other grounds by *People v Cervantes*, 448 Mich 620, 625-626 (1995), the trial court observed that it was difficult to know when Agent Minton was quoting from the original PSIR or updating the information.

Moreover, Agent Minton's report does not include several sections that are included in the Thompson report, including the Family, Marriage, Employment, Education, Substance Use and Treatment, Health, and Finances categories. Instead, Agent Minton included updates to these sections in the Thompson report. Striking the Thompson report completely, as the prosecutor suggests on appeal, would, therefore, leave the PSIR without those updates. The prosecutor additionally agrees that the trial court abused its discretion by not allowing defendant to challenge the accuracy of the information in the Thompson report, although the prosecutor argues that resentencing is not required because "Agent Minton prepared a reasonably updated PSIR."

Further, the final PSIR that has been produced for this Court's review omits many of the updates approved by the trial court. For example, the trial court ordered that Agent Minton not include updates to the Thompson report, but, rather, include those updates in his report and to leave the Thompson report as it was, but the updates remain in the Thompson portion of the PSIR. The trial court ordered that Agent Minton add that defendant had received continuing-education credits through the University of Michigan Dearborn and to attach psychological reports to the PSIR, but these changes are not present. Defendant is entitled to a remand for correction of the PSIR,

including the updates the trial court already ordered, and not including the separate Thompson report.  See *People v Harris*, 190 Mich App 652, 662; 476 NW2d 767 (1991).

Next, defendant argues, and the prosecutor agrees, that the trial court abused its discretion by overruling his challenge to the maximum penalty reflected in the PSIR.  MCL 750.316(1) provides that first-degree murder is to be punished by a LWOP sentence *except* as provided in MCL 769.25 and MCL 769.25a.  MCL 769.25a is the statute applicable to defendant as a person who had been sentenced to mandatory LWOP for an offense committed while under the age of 18 before the Supreme Court's decision in *Miller*.  See *Boykin*, 510 Mich at 180 n 2.  MCL 769.25a(4)(c) provides that, absent a motion by the prosecutor to reimpose a LWOP sentence, the trial court "shall sentence the individual to a term of imprisonment for which the maximum term shall be 60 years."  Because the prosecutor withdrew its initial motion for a LWOP sentence, the maximum penalty authorized by statute was 60 years of imprisonment, and the PSIR should have reflected that maximum penalty.  See *id*.

Defendant next challenges the trial court's ruling in regard to the statements that defendant was becoming more violent before the incident occurred.  Although Beckley's letter supports the assertion, defendant presented persuasive evidence calling the accuracy of the statement into question, including statements by defendant's previous counsel about Beckley's prior testimony that she had meant that the *home* was becoming more violent, rather than that defendant was.  The prosecutor's reliance on Beckley's letter, despite evidence suggesting that it was inaccurate, did not satisfy its burden of proving the accuracy of the allegation by a preponderance of the evidence.  See *Norfleet*, 317 Mich App at 669.  Therefore, the trial court abused its discretion by declining to strike the references.

The trial court did not, however, abuse its discretion by including a sentence referring to defendant's mental health and medication at the time he killed Nover.  The purpose of the resentencing was to ensure a sentence tailored to the circumstances of the case and the offender, with defendant's youth at the time of the offense as a mitigating factor.  *Boykin*, 510 Mich at 183, 188-189.  Given this focus on defendant's circumstances at the time of the offense, it would be inappropriate to omit reference to defendant's mental health at the time he committed the murder, and defendant does not suggest that the statement was inaccurate.  Moreover, the PSIR includes an update explaining that defendant was now engaging in voluntary mental-health treatment and was not taking any mental-health medications.

The trial court also did not abuse its discretion by overruling defendant's objections to statements referring to Nover as a "transportation officer."  The PSIR does not refer to Nover as a police or corrections officer, and the agent's description of the offense clearly states that Nover was a "Shiawassee County Juvenile Family / Probation Court Transportation Officer," thereby making it clear that use of the term "transportation officer" does not imply that Nover was a corrections officer employed by a jail or corrections facility.

Further, the trial court did not abuse its discretion by overruling defendant's challenge to statements about a misconduct ticket that defendant received in prison.  Defendant contends that the reference to the ticket should have been stricken because it involved a "minor ticket" that the parole board would not consider with respect to any release decision.  Even if the DOC would not consider the misconduct for purposes of parole consideration, it is not irrelevant to resentencing.

Prison misconduct is a common topic in PSIR updates for resentencing, see e.g., *People v Odom*, 327 Mich App 297, 313; 933 NW2d 719 (2019), and defendant does not dispute that he received the misconduct ticket or the circumstances that led to the ticket. It was reasonable for the trial court to consider defendant's complete incarceration record, including the misconduct.

Likewise, the trial court did not abuse its discretion when it ordered certain updates to the education, employment, and substance-abuse sections of the PSIR. Although defendant argues that the references were insufficient, the trial court was fully advised of defendant's educational advancements, vocational training, and substance-abuse treatment from the voluminous sentencing memorandum. See *id*. Further, MCR 6.425(A)(1) requires the PSIR to be "succinct" and that the descriptions of the defendant's vocational, employment, and education background be "brief." The updates the trial court ordered meet this standard.

Next, defendant argues that the trial court abused its discretion by including his previous description of the offense along with his 2022 statement. The original sentencing transcript does not support defendant's assertion that the 1999 statement was inaccurate or included against defendant's wishes at the time he was first sentenced. Further, defendant's more recent description of the events was included, satisfying the requirement to include any statement defendant wished to make, see MCR 6.425(A)(1)(h), and ensuring the PSIR was reasonably updated.

Likewise, the trial court's conclusion that the conviction for this offense should appear under the adult-history heading of his PSIR was not outside the range of principled outcomes. Although defendant was, as he argues, a juvenile when he committed the offense, defendant was tried by the criminal division of the circuit court as an adult.

Finally, however, the trial court abused its discretion by overruling defendant's request to strike the letter written by the judge who presided over the trial and original sentencing. Although the judge indicated in the letter that he provided copies to defense counsel and the Shiawassee County probation department when he sent it to the prosecutor, he dated the letter April 16, 2020, over two years before the resentencing hearing occurred. There is no indication that the judge wished for his opinion, either as a general member of the public or in an official capacity, to be considered at sentencing. The trial court's refusal to strike the letter from the PSIR, therefore, fell outside the range of principled outcomes.

When it is unclear whether information improperly included in a PSIR affected the sentence, the appropriate remedy is to remand for clarification. See *Maben*, 313 Mich App at 555-556. On remand, the trial court should strike the Thompson report and order that the updates be included in a single PSIR. Further, the PSIR should include the corrections originally ordered, in addition to reflecting a maximum penalty of 60 years of imprisonment, omit references to defendant's escalating violence, and strike the former judge's letter as an attachment. Additionally, if the trial court determines that the improperly considered information affected its sentencing decision, defendant will be entitled to resentencing. *See id*. If the amended information did not affect the sentence, the trial court need only correct the PSIR and forward a corrected copy to the DOC. *See id*.

## B. JUDICIAL DISQUALIFICATION

Defendant next argues that he should be resentenced by a different judge. Defendant filed a motion in 2020 to disqualify the judge and appealed the denial of that motion. Defendant now argues that his current claim for disqualification is a result of an accumulation of the previously addressed errors and the 2022 resentencing. Defendant's 2020 motion does not, however, sufficiently preserve this issue for appellate review.

Unpreserved claims of judicial bias are reviewed for plain error affecting a defendant's substantial rights. See *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). To obtain relief under plain-error review, a defendant must establish that the error was clear or obvious and that the error affected substantial rights. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). An error affects a defendant's substantial rights if it impacts the outcome of the proceedings. *Id*. "Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence." *People v Lockridge*, 498 Mich 358, 393; 870 NW2d 502 (2015).

Judges are presumed to be impartial, and a defendant claiming otherwise bears a heavy burden to overcome that presumption. *Jackson*, 292 Mich App at 598. The Michigan Court Rules identify several grounds for disqualification of a judge, including when the "judge is biased or prejudiced for or against a party or attorney." MCR 2.003(C)(1)(a). "Judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Jackson*, 292 Mich App at 598 (cleaned up).

Even if the judge had misapplied the requirements of *Boykin* as defendant argues, unfavorable rulings and opinions rarely provide a sufficient basis to find judicial bias. See *id*. The critical question is whether his ruling reflected a deep-seated favoritism or antagonism that would make fair judgment impossible. See *id*. Defendant has not established such favoritism or antagonism.

Defendant alleges additional instances of bias, which were already reviewed and rejected at the time of defendant's interlocutory appeal in *People v Espie*, unpublished per curiam opinion of the Court of Appeals, issued December 21, 2021 (Docket No. 355920). When this Court has already addressed an issue, "the legal question will not be differently determined in a subsequent appeal in the same case where the facts remain materially the same." *People v Zitka*, 335 Mich App 324, 334; 966 NW2d 786 (2021) (cleaned up). Because defendant's only new argument regarding judicial bias lacks merit, there is no need for us to address further his cumulative argument.

## C. FEES

Finally, defendant next argues that the trial court improperly ordered him to pay court-appointed attorney fees. Questions of law, including issues of statutory interpretation, are reviewed de novo. *People v Witkoski*, 341 Mich App 54, 59; 988 NW2d 790 (2022). A court may impose costs in criminal cases only when authorized by statute. *People v Cunningham*, 496 Mich 145, 149; 852 NW2d 118 (2014). The prosecutor confessed error on appeal.

Defendant's September 10, 1999, judgment of sentence lacks any order for fees or costs. MCR 6.429(A) provides that a "court may not modify a valid sentence after it has been imposed except as provided by law." The trial court had no authority to modify defendant's judgment in 2005 when it issued the remittance order. Therefore, the February 2, 2005 order is vacated.

Additionally, MCL 769.25a(2) provides for a sentencing judge to determine whether a defendant being resentenced after *Miller* will receive a sentence of LWOP or for a term of years. This statute does not contemplate reconsideration of every aspect of the sentence, but only the term of imprisonment. Therefore, the trial court erred by ordering defendant to pay attorney fees for his original trial counsel at resentencing, and defendant's 2022 judgment of sentence shall be amended to omit the provision requiring payment of attorney fees. Further, the $3,077.80 that defendant has paid in connection with the attorney-fee obligation shall be returned to defendant. Defendant does not challenge the $508.30 for expenses associated with resentencing, and these other expenses may be included in the judgment of sentence.

## III. CONCLUSION

Reversed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Deborah A. Servitto
/s/ Kristina Robinson Garrett