*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 1, 2024

Plaintiff-Appellee,

v

No. 366093
Arenac Circuit Court
LC No. 2022-004508-FH

CLARENCE EDSON JOHNSON III,

Defendant-Appellant.

Before: GADOLA, C.J., and PATEL and YOUNG, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions for two counts of assault with intent to do great bodily harm less than murder (AWIGBH) or assault by strangulation, MCL 750.84. Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to 47 to 180 months' imprisonment for each count. We affirm.

## I. BACKGROUND

This case arises from an incident where defendant strangled his adult daughter, Cassidy Johnson. Cassidy testified that she went to defendant's house to have him "look at [her] car." Both defendant and his wife, Robin Johnson, were intoxicated when Cassidy arrived. Defendant and Robin invited Cassidy to stay for a cookout. Shortly after Cassidy arrived at defendant's house, defendant's neighbor, Kayleen Frayer, came over to check on a vehicle that defendant was fixing for her. Kayleen socialized with everyone for a while and then returned home.

After Kayleen left, defendant became "grumpy" and "changed his mind about having a cookout." Defendant became "very aggravated" and began screaming at Cassidy. Defendant retreated to his bedroom. Shortly thereafter, Cassidy and Robin entered defendant's bedroom. Cassidy and defendant began arguing. Cassidy testified that defendant got up from the bed and grabbed her by the throat with both hands. Cassidy was unable to breathe. She kicked defendant backward toward the bedroom closet, and she fell back onto the bed. As Cassidy was getting up, defendant "came after [her] again" and grabbed her throat with his hands a second time. Cassidy testified that she lost consciousness "for a little bit" and recalled Robin pulling defendant off of her before she passed out. After she regained consciousness, Cassidy ran out of defendant's home

-1-

and saw Kayleen standing in defendant's driveway. Cassidy told Kayleen about the incident. Robin came outside a few minutes later. The three women stayed outside for approximately an hour. Cassidy later returned to the house to use the restroom, and Robin checked on defendant. When Cassidy left the bathroom, she saw defendant shove Robin to the floor causing her to hit her head and her forehead to bleed. Cassidy and Robin left the home and called the police.

Robin testified that Cassidy kept "bothering" defendant in his bedroom and would not let him sleep. Robin did not see defendant choke Cassidy. But she saw Cassidy hit defendant and push him when he got up. Robin stated she was certain defendant did not put his hands on Cassidy's neck. As Cassidy continued to hit and kick defendant, Robin intervened and took Cassidy outside. Robin confirmed both she and Cassidy were treated by medical personnel at the scene. However, neither woman went to the hospital after the incident.

Kayleen confirmed that she was at defendant's house on the night of the incident. Kayleen left defendant's house but returned a short time later. When she returned, Kayleen saw Cassidy and Robin standing outside the house. Kayleen noticed Cassidy had "red marks" around her neck. Kayleen confirmed that Cassidy did not have any marks on her neck when she saw her earlier in the night. Shortly after Robin and Cassidy went back inside the house, Kayleen heard Cassidy scream. Cassidy and Robin came back outside, and Kayleen noticed Robin had a bloody gash on her forehead. Kayleen waited with Cassidy and Robin for the police and ambulance to arrive. Kayleen confirmed that she did not witness any physical altercations that evening between defendant, Cassidy, and Robin.

Arenac County Sheriff Deputy Brandon Davison testified that he was dispatched to defendant's house on the night of the incident. Robin informed Deputy Davison that defendant had "snapped and grabbed Cassidy by the throat" earlier in the evening. The women reported that defendant was inside the home. Deputy Davison noticed redness around Cassidy's neck and an actively bleeding laceration on Robin's forehead. An ambulance arrived and medical personnel attended to both women. Deputy Davison and other deputies tried to make contact with defendant throughout the evening. They knocked on multiple doors and windows and ordered defendant to exit the home. However, all of the home's doors and windows were locked, and defendant did not respond to any of the orders to come outside or open the door. Later that day, Deputy Davison and other deputies returned to defendant's home with a warrant and arrested him.

Defendant denied that he drank alcohol that evening, but testified that Cassidy, Robin, and Kayleen all drank throughout the night. After he went to bed, Cassidy came into his room. Defendant asked her to leave him alone, but Cassidy became agitated and started slapping him. Defendant again asked her to leave, and Cassidy responded by "hitting and slapping . . . and kicking" him. He then "shoved her away from [him] to get up out of bed." Robin came into the room and took Cassidy out of the room with her. Defendant testified that he fell asleep after they left. He stated he did not have any contact with Cassidy or Robin the rest of the evening. Defendant did not know the police were at his home until he was "made aware" after he woke up in the morning. He maintained that the doors and windows are all normally locked, but denied that he locked the door that Cassidy and Robin had been using. Defendant claimed he did not know how Robin received her head injury or how Cassidy received her neck injury. Defendant contended he only put hands on Cassidy in order to shove her away to "get her to quit hitting [him]." He denied that he put his hands around Cassidy's neck.

Before the jury deliberated, defendant requested that the court give an instruction regarding self-defense. Defendant argued there was clear evidence of a self-defense claim because defendant pushed Cassidy off of him when she attacked him. The court denied defendant's request because defendant "[was not] charged with pushing somebody. [He was] charged with strangling somebody."

The jury found defendant guilty of two counts of AWIGBH or assault by strangulation. At the sentencing hearing, defendant objected to the scoring of Offense Variable (OV) 3 and OV 19, both of which were assessed at 10 points. Defendant argued that OV 3 was incorrectly scored because there was no indication that Cassidy suffered an injury requiring medical treatment. Additionally, defendant argued OV 19 was incorrectly scored because he had no obligation to exit his residence, and thus did not interfere with the administration of justice. The court concluded that both OVs 3 and 19 were properly scored. Defendant was sentenced as indicated. Defendant now appeals.

## II. JURY INSTRUCTION ON SELF-DEFENSE

Defendant argues the trial court erred when it denied his request to give an instruction regarding self-defense to the jury. We disagree.

We review claims of instructional error de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). But a trial court's determination whether a jury instruction applies to the facts of the case is reviewed for an abuse of discretion. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

We also review de novo the constitutional question whether a defendant was denied his constitutional right to present a defense. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). But defendant failed to raise this issue in the trial court and thus it is unpreserved. See *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). We review unpreserved claims of error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To obtain relief under plain-error review, a defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the lower court proceedings. *Id.* at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (cleaned up).

"It is the function of the trial court to clearly present the case to the jury and instruct on the applicable law." *People v Everett*, 318 Mich App 511, 529; 899 NW2d 94 (2017) (cleaned up). "A criminal defendant has a state and federal constitutional right to present a defense." *People v Kurr*, 253 Mich App 317, 326; 654 NW2d 651 (2002) (citing US Const, Ams VI, XIV; Const 1963, art 1, § 13). Further, "[a] criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "The instruction to the jury must include all elements of the crime charged . . . and must not

exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975).

"A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013). "An affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse, or mitigate it." *Id*. at 35 n 1. The Self-Defense Act, MCL 780.971 *et seq*., provides:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual. [MCL 780.972(2).]

"A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). "In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *Guajardo*, 300 Mich App at 35.

Further, a person is guilty of assault by strangulation if he "assaults another person . . . by intentionally impeding normal breathing or circulation of blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." MCL 750.84(1)(b) and (2). "MCL 750.84 reflects the Legislature's intent that a person is guilty of a felony if he or she commits *either* AWIGBH *or* an assault by strangulation or suffocation." *People v Barber*, 332 Mich App 707, 717; 958 NW2d 288 (2020) (emphasis added).

In this case, the prosecution's theory at trial was that defendant strangled Cassidy. In response, defendant argued he never put his hands on Cassidy's neck and that Cassidy instead made up the allegation that he choked her. Defendant testified that Cassidy initiated an attack on defendant and began slapping and kicking him; defendant then pushed Cassidy off of the bed to stop her assault.

We conclude defendant failed to present evidence that he strangled Cassidy in self-defense. Even if defendant reasonably acted in self-defense when he pushed Cassidy away from him, defendant was not charged with simple assault; he was charged with assault by strangulation. Thus, defendant was required to produce some evidence that the act of strangling Cassidy was in self-defense, not the act of pushing her away. See *Guajardo*, 300 Mich App at 35 n 1 ("An affirmative defense is one that admits the doing of the *act charged* . . . ." (emphasis added)). Further, a defense of self-defense "requires a finding that the defendant acted intentionally, but that the circumstances justified his actions." *Dupree*, 486 Mich at 707. Because defendant denies he committed the charged crime (assault by strangulation), we conclude he was not entitled to an instruction on self-defense. Accordingly, the trial court did not err when it denied his requested jury instruction and defendant was not denied his constitutional right to present a defense.

## III. SENTENCING

Defendant further argues the trial court erred by incorrectly scoring OVs 3 and 19 when determining defendant's sentencing guidelines range. We agree that OV 19 was improperly scored. But because we conclude that OV 3 was scored correctly, the guidelines range remains the same and thus defendant is not entitled to resentencing.

"Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Thompson*, 314 Mich App 703, 708; 887 NW2d 650 (2016). "A trial court's findings of fact are clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake." *People v Carlson*, 332 Mich App 663, 666; 958 NW2d 278 (2020). In addition, this Court reviews "de novo whether the facts as found were adequate to satisfy the statutory scoring conditions." *Id.*

OV 3 concerns physical injury to a victim. MCL 777.33. Ten points are assessed if "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). In *People v Maben*, 313 Mich App 545, 550; 884 NW2d 314 (2015), the defendant strangled the victim, causing him to lose consciousness. The responding police officer "observed redness" around the victim's neck and noted that the victim had "complained of soreness to his neck and throat area." *Id.* at 551. The victim then "refused an ambulance" and told the officer that he would "seek treatment on his own." *Id.* On appeal, the Court stated that "[t]he phrase 'requiring medical treatment' for purposes of OV 3 'refers to the necessity for treatment and not the victim's success in obtaining treatment.' " *Id.* at 551, citing MCL 777.33(3). Thus, "it was not necessary to establish that [the victim] actually went to the hospital." *Id.* Based on the observed redness around the victim's neck, the soreness to his neck and throat, and the fact he told the officer he intended to seek treatment, the Court concluded the trial court properly assessed 10 points for OV 3. *Id.* at 551-552.

In this case, there was testimony that Cassidy had visible red marks on her neck, had lost consciousness after being choked by defendant, and was treated by a paramedic at the scene. Although Cassidy did not seek additional medical treatment after the incident, we conclude her injuries were serious enough to require medical attention. Accordingly, the trial court properly assessed 10 points for OV 3.

OV 19 concerns a defendant's interference with the administration of justice or emergency services. MCL 777.49. Ten points are assessed if the offender "interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). "Hiding from the police constitute[s] an interference with the administration of justice because it [is] done for the purpose of hindering or hampering the police investigation." *People v Smith*, 318 Mich App 281, 286; 897 NW2d 743 (2016). But MCL 777.49(c) and *Hershey*'s interpretation of the language "contemplate something more than a suspect's denial of culpability."

*People v Deweerd*, 511 Mich 979, 980; 990 NW2d 864, 865 (2023). "A defendant's denial of culpability—without more—does not slow or prevent a criminal investigation or constitute an effort to do so*." Id.* "There must be some daylight between attempting to interfere with the administration of justice and simply not assisting in or helping facilitate a criminal investigation." *Id.*

In this case, the deputies announced their presence, identified themselves as law enforcement, and knocked multiple times on the doors and windows throughout the house. But the deputies were unable to verify whether defendant was inside the home. Defendant testified that he fell asleep after Robin removed Cassidy from his bedroom. He woke up some time later, observed Cassidy and Robin sitting outside around the fire pit, and returned to bed. Defendant testified that he remained asleep the rest of the night and did not know the police were at his home until he was "made aware" after he woke up in the morning. Later that day, defendant was arrested at his home without incident. There is no evidence that defendant interfered with or attempted to interfere with the administration of justice. The trial court erred by assessing 10 points for OV 19. It should have been scored at zero points. But because the scoring error does not alter the guidelines range, resentencing is not required. See *People v Davis*, 468 Mich 77, 83; 658 NW2d 800 (2003).

Affirmed.


/s/ Michael F. Gadola
/s/ Sima G. Patel
/s/ Adrienne N. Young